STATE OF NEBRASKA, APPELLEE, V. SEAN PHINNEY, APPELLANT.

459 N.W.2d 200

Filed August 10, 1990.   No. 89-759.

Thomas L. Spinar for appellant.

Robert M. Spire, Attorney General, and Mark D. Starr for appellee.

Hastings, C.J., Boslaugh, White, Caporale, Shanahan, Grant, and Fahrnbruch, JJ.

Hastings, C.J.

In *State v. Phinney*, 235 Neb. 486, 455 N.W.2d 795 (1990), because this court found that the record furnished on appeal failed to provide an adequate basis for a meaningful review by the court under Neb. Rev. Stat. § 43-276 (Reissue 1988), we remanded the cause with directions to the district court to review the record made on the motion to transfer and to set forth its findings as required by law. We further directed the district court to certify those findings back to this court for further consideration of defendant's appeal.

Suffice it to say that defendant was originally charged with the January 20, 1989, first degree murder of his mother and with the use of a weapon in the commission of a felony. Following the overruling of the defendant's motion to remove his case to the juvenile court, an agreement was reached whereby an amended information was filed charging defendant only with second degree murder, of which he was found guilty following a plea of no contest.

The district court has now certified to this court a journal entry dated June 20, 1990, in which further findings and conclusions in support of a denial of removal of the case to juvenile court were made. We review that certified record in light of defendant's original appeal.

In deciding whether to grant the requested waiver and to transfer the proceedings to juvenile court, the court having jurisdiction over a pending criminal prosecution must carefully consider the juvenile's request in light of the criteria or factors set forth in § 43-276. *State v. Nevels*, 235 Neb. 39, 453 N.W.2d 579 (1990); *State v. Thieszen*, 232 Neb. 952, 442 N.W.2d 887 (1989). Neb. Rev. Stat. § 29-1816 (Reissue 1989) provides that the district court shall transfer the case unless a sound basis exists for retaining it.

Section 43-276 requires consideration of the following criteria:

(1) [t]he type of treatment such juvenile would most likely be amenable to; (2) whether there is evidence that the alleged offense included violence or was committed in an aggressive and premeditated manner; (3) the motivation for the commission of the offense; (4) the age of the juvenile and the ages and circumstances of any others involved in the offense; (5) the previous history of the juvenile, including whether he or she had been convicted of any previous offenses or adjudicated in juvenile court, and, if so, whether such offenses were crimes against the person or relating to property, and other previous history of antisocial behavior, if any, including any patterns of physical violence; (6) the sophistication and maturity of the juvenile as determined by consideration of his or her home, school activities, emotional attitude and desire to be treated as an adult, pattern of living, and whether he or she has had previous contact with law enforcement agencies and courts and the nature thereof; (7) whether there are facilities particularly available to the juvenile court for treatment and rehabilitation of the juvenile; (8) whether the best interests of the juvenile and the security of the public may require that the juvenile continue in custody or under supervision for a period extending

beyond his or her minority and, if so, the available alternatives best suited to this purpose; and (9) such other matters as [are deemed] relevant . . . .

In analyzing the findings of the district court, we set them forth, nearly verbatim, categorized with respect to the nine specifications required by § 43-276.

(1) Type of treatment juvenile most likely to be amenable to:

Dr. Riedler tested, examined and found that Sean's social skills were fairly primitive. In addition, Sean had character problems which would require therapy when he became seventeen or eighteen years of age. Retraining was necessa[r]y before releasing him back into society and it was possible that such retraining might not be accomplished before Sean was nineteen years of age.

It did seem right that Sean should have been with young people rather than with adults. However, the State of Nebraska had an obligation to protect him from both adult and juvenile molestation wherever he was to be retrained.

. . . .

The boy needed highly structured treatment. If he were with juveniles, it would have been best but it was unlikely that he would have improved to the point where he could be released at eighteen and such release was most likely at the Youth Center.

(2) Evidence offense included violence or was committed in an aggressive and premeditated manner: "The violence that he was accused of was premeditated, considered, and exercised in the most decisive and final manner."

(3) Motivation: "His motivation was affected by one of the worst of situations and his act [to him], in some sense, constituted just desserts [sic] for the victim [sic]."

(4) Age of juvenile: "The age of fifteen is an accountable age. This boy appeared to be something less than an eighth grader in accademic [sic] ability."

(5) Previous history of juvenile: Although this was not mentioned by the court in its findings, the parties stipulated that defendant has no prior criminal record as an adult or juvenile.

(6) Sophistication and maturity of juvenile: "This boy was not mature mentally, not sophisticated and was emotional but there was no evidence that he was not accountable."

(7) Whether there are facilities particularly available to the juvenile court for treatment and rehabilitation of juvenile:

> There was no reason for the court to believe that there were facilities or persons who would provide care for Sean in or about Kearney that would not be available in Lincoln. After all, both locations are a part of the Nebraska Department of Corrections and the State's obligation to Sean is the same in either place.
>
> . . . .
>
> Facilities for the care of the boy are provided by the Department of Corrections and the State had the obligation to take care of him where ever the Department of Corrections placed him.

(8) Whether the best interests of juvenile and the security of the public may require that juvenile continue in custody or under supervision for period extending beyond minority:

> The Court had no reason to believe that a juvenile facility would retain or retrain Sean beyond his eighteenth birthday. Dr. Riedler did not say that Sean would be cured by the time he was nineteen or that Sean could be educated or retrained by then.
>
> . . . .
>
> The available alternatives, if any, were not really evidenced, discussed or made clear at the hearing and it was not clear that other youths must be retrained in the company of such extreme cases as this.

(9) Any other relevant matters:

> If Sean was not guilty, the jury system was still available to him in the adult court system which provides greater protection for his liberty and rights than the juvenile system.
>
> If guilty, Sean had the opportunity left to request that he be cared for under a five year plan and probation rather than face abandonment at age eighteen. [Apparently, the district court meant that defendant could have pleaded guilty and requested probation for a maximum of 5 years,

which would have given him training and supervision beyond that available as a juvenile.]

In *State v. Alexander*, 215 Neb. 478, 486-87, 339 N.W.2d 297, 301-02 (1983), this court stated:

There is no arithmetical computation or formula required in a court's consideration of the statutory criteria or factors. For retention of the proceedings as a prosecution of a criminal offense, the court need not resolve every factor against the juvenile. Also, there are no weighted factors, that is, no prescribed method by which more or less weight is assigned to each factor specified in the statute. [Citations omitted.]

The statutory criteria or factors of [§ 43-276] disclose a balancing test by which public protection and societal security are weighed against practical and not problematical rehabilitation of the juvenile. [Citations omitted.] "Rehabilitation has traditionally played a key role in the treatment of young offenders. . . . Nevertheless, the concept of deterrence and the need to balance individual justice with the needs of society—a balancing process that is basic and fundamental to the general scheme of the criminal law—also have a place in the juvenile justice system." *State in the Interest of C. A. H. & B. A. R.*, [89 N.J. 326, 336, 446 A.2d 93, 98 (1982)]. As a result of such balancing, some youths will be held accountable through proceedings in the adult criminal justice system for effective deterrence of future antisocial misconduct.

. . . The probability of success and the duration of rehabilitative treatment must be considered in determining the manner and location of detention, that is, in the juvenile justice system or criminal justice system. [Citations omitted.]

The standard of review applicable to an appeal from a denial of a motion to transfer to juvenile court is abuse of discretion. *State v. Nevels*, 235 Neb. 39, 453 N.W.2d 579 (1990).

The juvenile court's jurisdiction over a juvenile lasts only until the juvenile attains the age of majority, age 19, or the court otherwise discharges the juvenile from its jurisdiction. See,

Neb. Rev. Stat. §§ 43-247, 43-245(6), and 43-289 (Reissue 1988).

Dr. Riedler diagnosed defendant as suffering from dysthymia and major depression with a paranoid psychotic component. He felt that defendant's condition was not permanent, that it could be treated, and that defendant needed "quite a bit more treatment." According to Riedler, when defendant is 17 or 18 he will require some therapy. Although Riedler felt that if defendant were successfully treated at the Youth Development Center-Kearney he could be released back into society without posing a danger to society, Riedler admitted on cross-examination that it is possible that defendant will still have problems after he is 19 years old.

It was Riedler's opinion that defendant should be placed in the Youth Development Center-Kearney until he is 19 years old. However, as the trier of fact, the district court was not required to take the opinions of an expert as binding upon it. See *State v. Nevels, supra.*

The district court apparently was not convinced that defendant could be rehabilitated within the time the juvenile court would retain jurisdiction over him and was concerned about defendant's premeditated act of violence which resulted in the death of his mother. The district court's implicit conclusion that a sound basis exists for retaining jurisdiction over defendant's case as a criminal prosecution is supported by appropriate evidence. Thus, it cannot be said that the district court abused its discretion in refusing to transfer defendant's case to the juvenile court.

The appropriateness of defendant's sentence need not be addressed because defendant did not assign it as error.

The judgment of the district court is affirmed.

AFFIRMED.