STATE OF NEBRASKA, APPELLEE, V. SYDNEY L. THIESZEN,
APPELLANT.
442 N.W.2d 887

Filed July 21, 1989.   No. 88-605.

Mark M. Sipple, of Luckey, Sipple, Hansen, Emerson &
Schumacher, for appellant.

Robert M. Spire, Attorney General, and Steven J. Moeller
for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN,
GRANT, and FAHRNBRUCH, JJ.

WHITE, J.

On September 17, 1987, 14-year-old Sydney L. Thieszen shot
and killed his 12-year-old sister, Sacha L. Thieszen. Sydney
Thieszen was originally charged with first degree murder and
use of a firearm in the commission of a felony. On January 7,
1988, Thieszen filed a motion to transfer his case to juvenile
court. Following an evidentiary hearing, this motion was
denied by the district court for York County on February 2.

On May 3, 1988, pursuant to a plea bargain, an amended
information was filed charging Thieszen with second degree
murder and use of a firearm in the commission of a felony.
Guilty pleas were accepted by the court. On June 7, the

appellant was sentenced to life imprisonment on the second degree murder charge and 80 months to 240 months on the firearm charge, the latter sentence to be served consecutively to the first. It is from these sentences that Thieszen appeals, alleging the district court abused its discretion in failing to transfer his case to juvenile court and in imposing an excessive sentence with respect to the firearm charge.

A brief history of the life of the appellant, Sydney Thieszen, is necessary to illuminate the circumstances under which this distressing crime took place. Sydney was born November 13, 1972, with the name of Michael Anthony Firuccia. He never knew his biological father, who left home when Sydney was 2 years old. Sydney was raised by his natural mother, an alcoholic, who often subjected him to physical abuse when she was intoxicated. This abuse included an attempt to drown him at age 2, an attempt to burn his eyes out with a cigarette lighter, and an attempt to run his hands through a meat grinder.

The parental rights of the natural mother were subsequently terminated by the juvenile division of the York County Court. After spending time in various foster homes, Sydney finally went to the Thieszen home as a foster child in 1979 and was formally adopted by the family in 1983, at the age of 11. At this time, the Thieszens changed his name from Michael Anthony Firuccia to Sydney Lamont Thieszen.

At the time of Sacha's death, only four of the Thieszens' six children were still living at home. Of those four children, only one, Stefani, was a natural child of the Thieszens. The other three children, Sydney, Shea, and Sacha, were all adopted.

The Thieszens are religious and strictly adhere to the Mennonite faith. Their home is very structured, with discipline including physical spankings with a hose or a belt. Until age 12, Sydney exhibited no behavior problems, and in fact was an outgoing, apparently well-adjusted, intelligent child. A good student, he enjoyed participating in science fair projects, working on the farm with his dad, and hunting. At age 12, a drastic change in his behavior occurred. He began to earn poor grades and to seriously misbehave at home and at school. Sydney was caught "spying" on his sisters while they were bathing, shooting one of his mother's chickens, destroying

farm and school property, and viciously kicking a fellow female student for no apparent reason. In view of these activities, the Thieszens began therapy with Sandra Hale Kroeker, a certified social worker, in an attempt to return Sydney to more normal behavior.

Throughout the time Sydney was living in the Thieszen home, a number of other foster children also resided there. In December 1986, it was discovered that Sydney had been sexually molesting a younger foster child who was living with the Thieszens. As a result of this activity, a charge was filed in the juvenile division of the York County Court, and after admitting the offense, Sydney was placed on 2 years' probation. Until the murder of Sacha, Sydney performed well on probation, demonstrating respect both for his probation officer and the legal system in general.

Exactly what happened on September 17, the day Sydney killed Sacha, is unclear. In his statement made to officers who arrested him in Kansas a few days after the crime, Sydney indicates that he had no premeditated plan to kill his sister. When he came home from school on September 17, Sydney contends, he found a note on the kitchen table from his mother to his father, indicating that he had done something wrong and that his father was to "take care of it with the hose." After discovering the note, Sydney decided to run away. He went to his brother's room and took a .22-caliber pistol to take with him on his "escape," and tucked it into the waistband of his pants. He and his sister Sacha were in the kitchen area of the home, when she began to argue with him regarding his intent to run away. He hit Sacha in the head with a dowel. Sacha, bleeding from the head, ran upstairs to the bathroom. Sydney followed her up the stairs and looked in the bathroom at Sacha. She was leaning over the sink, bleeding, and crying. On impulse, he pointed the pistol at the back of her head and shot her once. She fell to the floor. He picked her up, placed her in the bathtub, and shot her twice more. He then took the family van and drove to Salina, Kansas.

When questioned, Sydney could give no reason for the crime. He repeatedly stated he did not know why he did it, but indicated that the reason he shot her while she was in the

bathtub after shooting her in the head was because he did not want her to "suffer" in case the first shot had not killed her.

The Thieszens dispute this account of the events of September 17. They contend that subsequent to the murder, a number of Sydney's classmates told the Thieszens that on numerous occasions Sydney said he was going to kill his whole family. At the hearing regarding the motion to transfer to juvenile court, these classmates testified that although Sydney had threatened to kill his family, they did not take his threats seriously because Sydney was the type of child to say things in order to draw attention to himself. Nonetheless, the Thieszens indicate that they are very frightened of Sydney and what he might do to them if he is released.

A number of psychological experts testified on the motion to transfer to juvenile court. Kroeker, who began counseling Sydney during the seventh grade, testified that Sydney had a conduct disorder and could not be diagnosed as an individual with a personality disorder because his personality was not yet fully formed. Kroeker testified that in an adult penal system, incarceration would tend to reinforce the violent, self-protective stance that Sydney takes in situations in which he feels threatened, and further stated that the risks to society and to Sydney are substantial if he is placed in an adult facility. She suggested that the Lincoln Regional Center would be an appropriate place for Sydney to receive care, but because they would have custody over him for only 4 years if admitted as a juvenile offender, she did not feel that the Lincoln Regional Center was the best place for Sydney, as this is not long enough to deal with the conduct disorder. She felt that it would take 6 to 10 years for successful rehabilitation.

Dr. David Kentsmith is a board-certified psychiatrist who practices in Omaha, Nebraska. He examined Sydney on October 2, 1987, and was called as a witness for the defense. Dr. Kentsmith stated that Sydney appeared to suffer from no apparent mental illness and was subdued and remorseful. He diagnosed Sydney as suffering from a conduct disorder. Further, Dr. Kentsmith testified that he diagnosed the event as an isolated, aggressive, unsocialized act. Dr. Kentsmith found Sydney treatable at this point in his life and stated that he would

do best in a setting where everyone incarcerated is being treated. He testified further that the high risk offender program at the Lincoln Regional Center would provide an appropriate environment for Sydney.

Dr. William Logan also testified on behalf of Sydney. Dr. Logan is a psychiatrist experienced in dealing with juveniles that have been charged with serious criminal offenses. He agreed that Sydney was suffering from a conduct disorder and testified that Sydney was greatly troubled by what had occurred. Dr. Logan further investigated whether the Lincoln Regional Center would accept Sydney. He testified that the Lincoln Regional Center is specifically designed to treat individuals who have a conduct disorder problem. However, Dr. Logan stated that he could not guarantee that after treatment at the Lincoln Regional Center, Sydney would not be violent in the future. He also testified that the hospital phase of the therapy could probably be completed by the time Sydney turned 19, but he would need many years of individual outpatient psychotherapy, which he would have to pursue on his own.

The appellant claims that the district court abused its discretion in refusing to transfer his case to juvenile court. The State argues, first, that this claim was waived by entering a guilty plea following the juvenile court hearing and, second, that the district court was correct in denying the motion to transfer.

Due to our disposition of this cause, whether the appellant waived his challenge to the district court's denial of his motion to transfer by entering a guilty plea is not an issue that needs to be resolved. Instead, we will focus on whether the district court erred in denying the appellant's motion to transfer. The standard of review applicable to an appeal from a denial of a motion to transfer to juvenile court is abuse of discretion. *State v. Ryan*, 226 Neb. 59, 409 N.W.2d 579 (1987). In view of this standard, in order to reverse we must find that the district court abused its discretion in refusing to transfer this case.

In deciding whether to grant the requested waiver and to transfer the proceedings to juvenile court, the court having jurisdiction over a pending criminal prosecution must carefully

consider the juvenile's request in the light of the criteria or factors set forth in Neb. Rev. Stat. § 43-276 (Reissue 1988). *State v. Ryan, supra*; *State v. Alexander*, 215 Neb. 478, 339 N.W.2d 297 (1983).

Section 43-276 requires a consideration of the following criteria:

(1) The type of treatment such juvenile would most likely be amenable to; (2) whether there is evidence that the alleged offense included violence or was committed in an aggressive and premeditated manner; (3) the motivation for the commission of the offense; (4) the age of the juvenile and the ages and circumstances of any others involved in the offense; (5) the previous history of the juvenile, including whether he or she had been convicted of any previous offenses or adjudicated in juvenile court, and, if so, whether such offenses were crimes against the person or relating to property, and other previous history of antisocial behavior, if any, including any patterns of physical violence; (6) the sophistication and maturity of the juvenile as determined by consideration of his or her home, school activities, emotional attitude and desire to be treated as an adult, pattern of living, and whether he or she has had previous contact with law enforcement agencies and courts and the nature thereof; (7) whether there are facilities particularly available to the juvenile court for treatment and rehabilitation of the juvenile; (8) whether the best interests of the juvenile and the security of the public may require that the juvenile continue in custody or under supervision for a period extending beyond his or her minority and, if so, the available alternatives best suited to this purpose; and (9) such other matters as the county attorney deems relevant to his or her decision.

In *State v. Alexander, supra*, and *State v. Ryan, supra*, we stated:

"There is no arithmetical computation or formula required in a court's consideration of the statutory criteria or factors. . . . [T]he court need not resolve every factor against the juvenile. Also, there are no weighted factors,

that is, no prescribed method by which more or less weight is assigned to each factor specified in the statute. [Citations omitted.]

The statutory criteria or factors of [§ 43-276] disclose a balancing test by which public protection and societal security are weighed against practical and not problematical rehabilitation of the juvenile. [Citations omitted.] 'Rehabilitation has traditionally played a key role in the treatment of young offenders. . . . Nevertheless, the concept of deterrence and the need to balance individual justice with the needs of society—a balancing process that is basic and fundamental to the general scheme of the criminal law—also have a place in the juvenile justice system.' "

State v. Ryan, supra at 79-80, 409 N.W.2d at 592, quoting State in the Interest of C. A. H. & B. A. R., 89 N.J. 326, 446 A.2d 93 (1982).

Based on the evidence summarized above, the trial court found that a sound basis existed for the court to retain jurisdiction of the defendant's case. These findings may be summarized as follows:

The trial court found that Sydney Thieszen was a 15-year-old adopted boy charged with first degree murder and with the use of a firearm in the commission of a felony.

The trial court stated that the acts were committed with violence, aggression, and perhaps premeditation, while no motivation for the crimes was shown.

The trial court also found that the defendant has been adjudicated in a juvenile court for a crime of violence against a person and has been involved in a number of incidents of antisocial behavior, including acts of physical violence against persons and property which have not been adjudicated.

As for sophistication, the trial court stated that the defendant is pseudomature, lacks sophistication, and has few · social or verbal skills.

The trial court also found that the defendant suffers from a severe conduct disorder and may suffer a severe personality disorder, both of which may require controlled behavioral management therapy for 6 to 10 years or more.

Further, the trial court held that the juvenile court system of this State lacks jurisdiction and facilities for treatment and rehabilitation of this defendant for such an extended period of time.

Finally, the trial court found that the adult court system offers few satisfactory alternatives for the treatment and rehabilitation of the defendant, but the need for extended, controlled behavioral management and the security of the public outweigh the possible failure of such treatment and rehabilitation.

We find that the district court did not abuse its discretion in retaining jurisdiction. Although evidence exists indicating that perhaps the defendant could have been successfully rehabilitated within the time the juvenile court maintained jurisdiction over him, approximately 4 years, the record also supports the trial court's findings that the crime was violent and that the defendant may require treatment beyond the age of majority. Additionally, there was one previous adjudication for sexual molestation, and various other antisocial acts were committed by the defendant. This first assignment of error is therefore meritless.

The defendant next contends that his sentence on the firearm charge, 80 to 240 months to be served consecutively to the life sentence on the murder charge, is excessive and amounts to an abuse of discretion. In reviewing a sentence, a sentence imposed within the statutory limits will not be disturbed on appeal absent an abuse of discretion. *State v. Peters*, 231 Neb. 242, 435 N.W.2d 675 (1989).

Neb. Rev. Stat. § 28-1205(2) (Reissue 1985) makes the use of a firearm in the commission of a felony a Class III felony. A Class III felony, defined in Neb. Rev. Stat. § 28-105 (Reissue 1985), carries a maximum of 20 years' imprisonment, a $25,000 fine, or both, with a minimum of 1 year's imprisonment. Because the sentence given to the appellant is within the statutory limits, this sentence will not be disturbed on appeal absent an abuse of discretion. *State v. Peters, supra.*

Although this is a tragic case in all respects, as not one but two lives are lost, we cannot say that the trial court abused its discretion in imposing the sentence of 80 to 240 months'

imprisonment on the firearm charge. Therefore, this assignment of error is also without merit.

In view of the foregoing analysis, the judgment of the district court is affirmed.

AFFIRMED.