IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. BARROW


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

KENDELL L. BARROW, APPELLANT.


Filed January 8, 2019.    No. A-17-1010.


Appeal from the District Court for Douglas County: THOMAS A. OTEPKA, Judge. Affirmed in part, and in part vacated and remanded with directions.

Thomas C. Riley, Douglas County Public Defender, Yvonne Sosa, and, on briefs, Jacquelyn R. Morrison for appellant.

Douglas J. Peterson, Attorney General, and Stacy M. Foust for appellee.


MOORE, Chief Judge, and RIEDMANN and WELCH, Judges.

WELCH, Judge.

INTRODUCTION

Kendell L. Barrow appeals his convictions of possession of a firearm by a prohibited person and second offense carrying a concealed weapon. He assigns that the court erred by not requiring the State to produce evidence required by *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963); that the court erred by denying his motion for a mistrial on the basis of unfairly prejudicial testimony placed before the jury; and that the court imposed an excessive sentence on his conviction for possession of a firearm by a prohibited person. We affirm his convictions, but find plain error in the sentence imposed on the conviction for second offense carrying a concealed weapon. We therefore vacate that sentence only and remand the cause with directions.

STATEMENT OF FACTS

At 2:10 p.m. on the afternoon of January 7, 2017, Omaha police officer Shundale Bynum began his shift which was to last until 10:40 p.m. At the beginning of his shift, he inspected his cruiser pursuant to standard operating procedure (SOP), and did not find anything located in the backseat area of his cruiser. A little over an hour later, Officer Bynum and fellow officer, Phillip Payton, were dispatched to a domestic disturbance. After the victim allowed the officers to enter the home which had been identified as the location of the domestic disturbance, they located Barrow. The officers performed a pat-down search of Barrow which did not reveal any weapons. After questioning, Barrow was arrested and searched incident to arrest, including a search of his waistline and pockets. This search also failed to reveal any weapons.

Officer Bynum transported Barrow to the Douglas County Correctional Center and booked him for two misdemeanors. The entire incident, from approaching the house to entering the Douglas County Correctional Center booking area, was recorded on Officer Bynum's body camera. The officers did not locate a weapon until that night when Officer Bynum performed a post-shift inspection and found an unregistered gun on the back floorboard of his cruiser. Following that discovery, Bynum put on gloves, retrieved the gun, placed it into a property envelope, which he then sealed. Bynum transported the sealed envelope containing the gun to the "crime lab" for forensic analysis including fingerprint and DNA processing. Barrow was identified as the major DNA contributor on the gun and the probability of an unrelated individual matching the major DNA was approximately 1 in 34.8 nonillion. As a result of the discovery of the gun, DNA swabbing, and DNA testing results, Barrow was charged with count 1, possession of a weapon by a prohibited person and count 2, carrying a concealed weapon.

Prior to the scheduled jury trial in this case, Barrow filed a motion for discovery. During a hearing thereon, defense counsel stated that he had previously requested any emails in possession of the county attorney's office regarding Barrow, "specifically any and all emails from the Omaha Police Department regarding their prior contacts with Mr. Barrow." Defense counsel further stated that the prosecution had informed defense counsel that it was in possession of an email where at least one member of the Omaha Police Department discussed prior contacts and concerns with Barrow. Defense counsel also noted receiving a portion, but not all portions, of the email. Defense counsel requested that the State be ordered to comply with the request and turn over remaining portions of the subject email. Defense counsel argued "I believe that it said . . . something to the extent of how many times are we going to have to catch [Barrow] or find [him] with a gun before he's put away?" The email chain requested by defense counsel, which this court received under seal, was from September 2011. None of the officers in the email chain testified at trial.

At the June 2017 trial, Bynum testified that, per SOP, he inspected his cruiser at the beginning of his shift and did not see a handgun. He testified that there are no areas that a handgun could be hidden in the backseat and that the floorboard of the cruiser curves up in a way that prevents items from sliding back and forth between the front and back of the cruiser. Bynum then testified regarding locating the gun and booking it into property and the State questioned him on how he associated the gun with Barrow:

Q After you had booked these items into property, did you . . . take any actions based upon what you found in the back seat of your cruiser?

A After I had everything booked in that night, I reviewed the call details and also attempted to make contact with the original caller.

Q In regards to original caller for what incident?

A The possession of the handgun.

Q When you say "original caller," for one of the dispatches you had received that particular shift?

A Yes, for . . . the original caller who called in the disturbance.

Q Okay. And why are you picking out or why did you find it significant that you had to focus on that particular call?

A Because that was the only call where the caller mentioned a handgun.

MR. SLADEK: Objection, Your Honor. I'll move to strike.

MR. MASTELLER: And I would agree to strike that, sir. Maybe I'll ask a different question.

THE COURT: Disregard the last answer, it's stricken.

BY MR. MASTELLER:

Q Now, was that the only call in which as a result of the call someone was placed in the back seat of your cruiser?

A Yes.

Barrow's counsel requested a sidebar, suggested a mistrial might be appropriate, but did not specifically request a mistrial. The court responded that "I think that at least you've made your record and I told [the jury] to disregard it. Thank you." The prosecutor continued his examination of Bynum. After a few more questions, the prosecutor concluded his questioning of Bynum, the jury was released on a recess, and defense counsel requested a mistrial:

MR. SLADEK: Just briefly, Judge. Thank you for your patience. Before we broke, there was some testimony elicited from Officer Bynum in which he indicated that the original call which brought him into contact with Mr. Barrow, the defendant, included a statement about there being a gun involved. Obviously, I realize that the Court, based on my objection, struck that testimony and ordered that the jury disregard the testimony. In an abundance of caution, I'll ask the Court to consider a motion for a mistrial. On the motion for a mistrial, I don't believe that there was any malicious intent involved on Mr. Masteller's part or Officer Bynum's part, but because of the open-ended question, I think that it could elicit that kind of answer. And that will be my basis for the motion for mistrial, Judge.

THE COURT: Thank you. Did the State wish to be heard?

MR. MASTELLER: Your Honor, I would ask you to overrule that motion. The reference to a firearm was very brief. There's no indication that the firearm referenced in the initial call was actually this firearm which is the subject of this prosecution.

I believe Your Honor appropriately struck the testimony and also appropriately instructed the jury to disregard that testimony, which I believe would cure any type of prejudice from the jury having heard that brief reference to a firearm.

THE COURT: Thank you. The motion is overruled.

The jury found Barrow guilty of the charged offenses.

After an enhancement hearing, the court found that Barrow had previously been convicted of carrying a concealed weapon. At the sentencing hearing, the court stated that, in determining the appropriate sentences for Barrow, he considered factors including the defendant's age, mentality, education, experience, social and cultural background, his past criminal record, the motivation for the offense and the nature of the offense, and the presence or absence of violence. The court then sentenced Barrow to 10 to 15 years' imprisonment for count 1, (possession of a firearm by a prohibited person) and 1 to 2 years' imprisonment for count 2 (second offense carrying a concealed weapon). The court ordered count 2 to be served concurrently to count 1 and granted Barrow 248 days credit for time served. The State immediately informed the court: "Your Honor, I don't believe you can do an indeterminate sentence on Count 2. It's a Class IV." The court then "corrected" Barrow's sentence on count 2 to 1 year's imprisonment to be served concurrently to count 1. Barrow timely appeals to this court and is represented by the same counsel that represented him at trial and sentencing.

## ASSIGNMENTS OF ERROR

Barrow assigns that the district court (1) erred in denying his discovery motion requesting the State produce the 2011 email chain between the county attorney and the Omaha Police Department, (2) abused its discretion by denying his motion for a mistrial following Officer Bynum's testimony governing a call mentioning a handgun, and (3) abused its discretion by imposing an excessive sentence for his conviction of possession of a firearm by a prohibited person.

## STANDARD OF REVIEW

Discovery in a criminal case is generally controlled by either a statute or court rule; therefore, unless granted as a matter of right under the Constitution or other law, discovery is within the discretion of a trial court, whose ruling will be upheld on appeal unless the trial court has abused its discretion. *State v. Henderson*, 289 Neb. 271, 854 N.W.2d 616 (2014); *State v. McMillion*, 23 Neb. App. 687, 875 N.W.2d 877 (2016).

Materiality under *Brady* is a question of law subject to *de novo* review. *United States v. Straker*, 800 F.3d 570 (D.C. Cir. 2015); *United States v. Oruche,* 484 F.3d 590 (D.C. Cir. 2007).

Whether to grant a motion for mistrial is within the trial court's discretion, and this court will not disturb its ruling unless the court abused its discretion. *State v. Lester*, 295 Neb. 878, 898 N.W.2d 299 (2017).

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Garza*, 295 Neb. 434, 888 N.W.2d 526 (2016).

ANALYSIS

*BRADY* VIOLATION

Barrow first argues that the trial court erred in overruling his motion requesting that the State produce a 2011 email chain between the county attorney and officers of the Omaha Police Department. In support of this assignment, Barrow argues that the suppression of this email by the prosecution denied him due process because the email contained evidence favorable to him which was material to either his guilt or punishment.

This assignment of error is commonly referred to as a *"Brady"* violation in reference to *Brady v. Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). As our Supreme Court noted in *State v. Castor,* 257 Neb. 572, 584, 599 N.W.2d 201, 211 (1999):

> The starting point in our analysis is *Brady v. Maryland,* 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), in which the U.S. Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." "[F]avorable evidence is material, and constitutional error results from its suppression by the government, 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Kyles v. Whitley,* 514 U.S. 419, 433-34, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995), quoting *United States v. Bagley,* 473 U.S. 667, 473 U.S. 667, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985).

Specifically, Barrow argues that, although he has not seen the full email, based upon representations of the State and a copy of a portion of the email supplied by the State, he believes the email contains communications between the county attorney and members of the Omaha Police Department indicating their frustration with Barrow not being previously "put away" for prior gun possession and wanting him "off the streets." Brief for appellant at 9-10.

Barrow further argues the email could have been used to show institutional bias by the Omaha Police Department against Barrow and provided a motive for police to collude and commit an act of misconduct in connection with the current charges. Although Barrow does not state the specific act of misconduct, he apparently is alleging the email provides sufficient basis to infer that certain members of the Omaha Police Department, based upon their frustration with Barrow, were willing to fabricate where the weapon was found and how Barrow's DNA got on the weapon.

As the Supreme Court held in *State v. Clifton,* 296 Neb. 135, 162, 892 N.W.2d 112, 134 (2017):

> As refined by subsequent case law, there are three components to a *Brady* violation: (1) The evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued such that there is a reasonable probability that the suppressed evidence would have produced a different verdict; i.e., the suppressed evidence must be "'material either to guilt or to punishment.'"

(quoting *Brady v. Maryland*[, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963)]. Accord *United States v. Bagley*[, 473 U.S. 667, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985)].

The United States Supreme Court has further held:
"[E]vidence is 'material' within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." "A 'reasonable probability' of a different result" is one in which the suppressed evidence "'undermines confidence in the outcome of the trial.'" . . . We must examine the trial record, "evaluat[e]" the withheld evidence "in the context of the entire record," and determine in light of that examination whether "there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different."

*Turner v. United States*, ___ U.S. ___, 137 S. Ct. 1885, 1893, 198 L. Ed. 2d 443 (2017) (internal citations omitted).

Barrow's argument here is that the State's case was premised upon the credibility of Officer Bynum who testified that he found Barrow's gun in his cruiser later in the day after he had transported Barrow and left him at the Douglas County Correctional Facility. Barrow further argues that Officer Bynum failed to discover the gun after performing a pat down search and search incident to arrest and that the State only linked the gun to Barrow based upon Officer Bynum's testimony and evidence that Barrow's DNA was found on the gun. He argues that the evidence suggests collusion on the part of the Omaha Police Department relating to this evidence and that the 2011 email, allegedly documenting another officer's prior frustration with the prosecutor's office for failing to adequately prosecute Barrow on a previous gun charge, suggests collusion here in order to get Barrow "off the streets." Brief for appellant at 10. Barrow contends that "[a]llowing [him] to use the email to impeach the officers' credibility would have not only weakened the State's case, but also bolstered [his] argument that the police engaged in misconduct." Brief for appellant at 9.

In order to constitute a *Brady* violation, the State's failure to produce the email must be sufficient to undermine the confidence in the outcome of this trial. Stated differently, based upon this record as a whole, we would need to find that if Officer Bynum was impeached at trial with this email, there is a reasonable probability that the result of the proceeding would have been different. We have carefully reviewed the entire record, including the subject email which was filed under seal and conclude that no *Brady* evidence was suppressed. To suggest that, because an officer, many years ago, exhibited frustration with what that officer felt was the State's failure to adequately prosecute Barrow, resulted in collusion among current members of the Omaha Police Department to obtain a conviction of Barrow is highly speculative. There was no other evidence in this entire record which would suggest of such a conspiracy. To quote the United States Supreme Court, "[c]onsidering the withheld evidence 'in the context of the entire record,' . . . we conclude that it is too little, too weak, or too distant from the main evidentiary points to meet *Brady*'s standards." *Turner v. United States*, 137 S. Ct. at 1894.

Perhaps acknowledging the remoteness of the specific evidence, Barrow argues:

Evidence disclosed to the defense does not have to be impeachment evidence in and of itself; it is discoverable if there is a strong indication that such information will play an important role in uncovering admissible evidence, aiding preparation of witnesses, corroborating testimony, or assisting impeachment or rebuttal.

Brief for appellant at 10. However, Barrow improperly conflates the discovery standard under Neb. Rev. Stat. § 29-1912 (Reissue 2016) and the production standard under *Brady*. As the Supreme Court stated in *State v. Harris,* 296 Neb. 317, 335, 893 N.W.2d 440, 454 (2017):

Nebraska's primary discovery statute [§ 29-1912] in criminal cases, whether a prosecutor's failure to disclose evidence results in prejudice depends on whether the information sought is material to the preparation of the defense, meaning that there is a strong indication that such information will play an important role in uncovering admissible evidence, aiding preparation of witnesses, corroborating testimony, or assisting impeachment or rebuttal.

Moreover, as the Nebraska Supreme Court held in *State v. Jackson*, 275 Neb. 434, 450-51, 747 N.W.2d 418, 434-35 (2008):

In *State v. Castor,* [257 Neb. 572, 599 N.W.2d 201 (1999),] we held that Nebraska's disclosure statute [codified at § 29-1912] is more exacting than federal due process requirements. In particular, we held that "whether a prosecutor's failure to disclose such evidence results in prejudice to the accused 'depends on whether the information sought is material to the preparation of the defense, meaning that there is a strong indication that such information will play an important role in uncovering admissible evidence, aiding preparation of witnesses, corroborating testimony, or assisting impeachment or rebuttal.'"

The standard under § 29-1912 for exculpatory evidence is slightly different from the due process standard announced in *United States v. Bagley,* 473 U.S. 667, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985). Both standards require a showing that the nondisclosure prejudiced the defendant by preventing him or her from acquiring material evidence. Nebraska law, however, defines materiality more broadly to apply to evidence which strongly indicates it would play an important role in preparing a defense. *Brady* did not focus on the defendant's ability to prepare for trial, because *Brady* was not a rule for discovery.

In his motion for discovery, Barrow originally alleged the State was required to produce the subject email pursuant to § 29-1912(f); *U.S. v. Bagley, supra*; and *Brady v. Maryland, supra*. However, during the hearing on the motion, Barrow's trial counsel withdrew the motion as it pertained to the discovery rules and pursued the motion solely on the basis of the email being discoverable under *Bagley* and *Brady*. Having failed to raise the issue before the trial court, Barrow cannot raise the issue for the first time on appeal. See *State v. Ortega*, 290 Neb. 172, 859 N.W.2d 305 (2015) (appellate courts do not generally consider arguments and theories raised for first time on appeal). See, also, *State v. Heng*, 25 Neb. App. 317, 905 N.W.2d 279 (2017) (when issue is raised for first time in appellate court, it will be disregarded inasmuch as lower court cannot commit error in resolving issue never presented and submitted to it for disposition). We hold that

the district court did not err in overruling Barrow's motion for discovery requesting the State produce the email contained in exhibit 1 under the rules announced by the United States Supreme Court in *Brady* and *Bagley*. We do not reach, and express no opinion, as to whether there was a violation of Nebraska's discovery statute as the issue was not preserved for appeal.

MOTION FOR MISTRIAL

Barrow contends that the district court abused its discretion by denying his motion for a mistrial after Officer Bynum responded to an open-ended question by stating that the domestic disturbance call was the "only call where the caller mentioned a handgun." Barrow immediately objected and moved to strike the testimony. The State agreed to strike the answer and the court specifically instructed the jury to disregard Officer Bynum's response. Officer Bynum then testified that was the only call which resulted in someone being placed in the back seat of his cruiser. Defense counsel immediately requested a sidebar in which he stated that it was "pretty significant testimony that Officer Bynum just elicited to the jury that is not admissible. I don't know if it's grounds for a mistrial that the jury has heard that now, but I do think it's extremely prejudicial and I just want that noted for the record." The court stated "I think that at least you've made your record and I told [the jury] to disregard it." At the conclusion of Officer Bynum's testimony, defense counsel requested a mistrial, which the trial court denied.

A motion for mistrial is properly granted in a criminal case where an event occurs during the course of trial that is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial. *State v. Foster*, 300 Neb. 883, 916 N.W.2d 562 (2018), *disapproved on other grounds, State v. Allen*, 301 Neb. 560, 919 N.W.2d 500 (2018). A defendant must prove that an alleged error actually prejudiced him or her, rather than creating only the possibility of prejudice, in order for a motion for mistrial to be properly granted. *Id*. Error cannot ordinarily be predicated on the failure to grant a mistrial if an objection or motion to strike the improper material is sustained and the jury is admonished to disregard such material. *State v. McCurry*, 296 Neb. 40, 891 N.W.2d 663 (2017).

Barrow has not sufficiently demonstrated that Officer Bynum's response followed by the State's acquiescence and the court's admonishment improperly influenced the outcome of this case. In short, Barrow was charged with possession of a deadly weapon and carrying a concealed weapon. The evidence demonstrated that Barrow's weapon was found in Officer Bynum's cruiser following his transport to Omaha Corrections and that Barrow's DNA was found on the gun. Barrow was the only person transported in Bynum's cruiser that day and Bynum had inspected his vehicle prior to transporting Barrow. During transport, Barrow had dislodged his seatbelt and, when Bynum arrived at corrections and removed Barrow, he noticed Barrow had to pull his pants back up. The evidence of Barrow's guilt was compelling when weighed against the possibility that the jury did not disregard Officer Bynum's response as instructed by the trial court. See *State v. Daly*, 278 Neb. 903, 775 N.W.2d 47 (2009) (it is presumed that jury followed instructions given in arriving at its verdict). There is no showing of actual prejudice and the court did not err in denying Barrow's motion for mistrial.

EXCESSIVE SENTENCE

Barrow contends that the sentence imposed on his conviction for possession of a firearm by a prohibited person was excessive.

First offense possession of a firearm by a prohibited person is a Class ID felony punishable by a mandatory minimum of 3 years' imprisonment and up to 50 years' imprisonment. See, Neb. Rev. Stat. § 28-105 (Reissue 2016); Neb. Rev. Stat. § 28-1206 (Supp. 2017). Barrow's sentence of 10 to 15 years' imprisonment is well within the statutory sentencing range.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Hunt*, 299 Neb. 573, 909 N.W.2d 363 (2018). When imposing a sentence, the sentencing court is to consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id*. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *State v. Thieszen*, 300 Neb. 112, 912 N.W.2d 696 (2018).

During Barrow's sentencing hearing, the Court recounted that it had reviewed the probation file, police reports, and PSR, and that, in attempting to determining the appropriate sentence for Barrow, the court had considered Barrow's age, mentality, education, experience, social and cultural background, past criminal record, motivation for the offense, nature of the offense, and the presence or absence of violence. The district court noted that Barrow had been sentenced to prison once and to jail 16 times and had an "extensive history of arrests for weapons possessions, domestic assaults, criminal mischief, driving under suspension, marijuana possession, leaving the scene of property damage accidents." The court further noted:

> In the probation officer's opinion, the defendant is a high risk for rearrest, and this is based on the age at which he first became involved in the criminal court system and the fact that he's been arrested for felony offenses in the past, has a history of documented violence, and a well[-]documented history of possession of firearms.
>
> He's committed domestic assault several times against women. He's possessed firearms illegally on many occasions and reports a past diagnosis of post-traumatic stress disorder. Limited history of employment.
>
> During the PSI, he continued to deny he possessed the firearm. He's demonstrated, according to probation, now with this multiple arrests for carrying concealed weapons that he is a habitual carrier of firearms. . . .

Barrow's sentence for conviction of possession of a firearm by a prohibited person, first offense, was within the statutory sentencing ranges. Further, after reviewing the record, we find that the district court appropriately considered all required factors and the court did not abuse its discretion in imposing this sentence.

We now turn to an issue of plain error raised by the State regarding Barrow's sentence for second offense carrying a concealed weapon which is a Class IV felony. Plain error may be found on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process. *State v. Kidder*, 299 Neb. 232, 908 N.W.2d 1 (2018).

A Class IV felony is punishable by 0 to 2 years' imprisonment, a $10,000 fine, or both. See § 28-105. Postrelease supervision--a minimum of 9 months and a maximum of 12 months--is also required if imprisonment is imposed for a Class IV felony. *Id*. Neb. Rev. Stat. § 29-2204.02(1)(a) (Reissue 2016) requires a determinate sentence of imprisonment for a Class IV felony, unless probation is otherwise required pursuant to § 29-2204.02(2). However, probation was not required here because Barrow was sentenced to imprisonment for another Class ID felony. See § 29-2204.02(2)(a). Additionally, § 29-2204.02(4) requires an indeterminate sentence for any sentence of imprisonment for a Class IV felony for an offense committed on or after August 30, 2015, imposed consecutively or concurrently with a sentence of imprisonment for a Class I, IA, IB, IC, ID, II or IIA felony. No postrelease supervision was required for this Class IV felony since Barrow was subject to a separate sentence for a Class ID felony. See § 28-105(6).

Here, the court initially imposed a sentence of 1 to 2 years' imprisonment for Barrow's conviction of second offense carrying a concealed weapon. However, at the request of the State, mistakenly believing a determinate sentence was required, the court changed the sentence to 1 year's imprisonment. Thus, the initial sentence of 1 to 2 years' imprisonment which an indeterminate sentence was validly imposed pursuant to § 29-2204.02(4), whereas the "corrected" sentence of 1 year's imprisonment was actually an invalid sentence pursuant to that same statute.

Nebraska's appellate courts "have consistently applied the rule that a sentence validly imposed takes effect from the time it is pronounced . . . and . . . any subsequent sentence fixing a different term is a nullity." *State v. Kidder*, 299 Neb. at 247, 908 N.W.2d at 11. "We have applied this rule to attempts to modify a valid pronouncement during the sentencing hearing and to attempts to modify a valid sentence that has been put into execution." *Id*. Thus, any attempt to modify a sentence validly imposed is of no effect and the original sentence remains in force; although it is possible, in limited circumstances, to correct an inadvertent mispronouncement of a valid sentence before the defendant has left the courtroom. See *Id*.

Here, although the court's attempted modification of Barrow's sentences occurred before Barrow had left the courtroom, the district court did not mispronounce its initial sentence. It was only after the State's request, which was made under a mistaken belief that a determinate sentence was required, that the court "corrected" Barrow's sentence to 1 year's imprisonment. Because the sentence originally pronounced was valid, it took effect as soon as it was pronounced and any attempt thereafter to modify it was plainly erroneous and of no legal effect. See *State v. Kidder, supra*.

We thus vacate that portion of the sentencing order imposing a term of 1 year's imprisonment on count 2 and remand the cause to the district court with directions to reinstate the valid term originally pronounced on that count.

## CONCLUSION

For the foregoing reasons, we reject Barrow's assignments of error and affirm his convictions. Further, the court did not abuse its discretion in sentencing Barrow for possession of a firearm by a prohibited person; however, we find plain error in the court's modifying the term of the sentence validly imposed on count 2 and therefore vacate that portion of the sentencing order and remand the cause to the district court with directions to reinstate the term of 1 to 2 years' imprisonment originally pronounced. In all other respects, the judgment of the district court is affirmed.

AFFIRMED IN PART, AND IN PART VACATED
AND REMANDED WITH DIRECTIONS.