KENNETH M. DONAHOO ET AL., APPELLANTS, V. HOME OF THE GOOD SHEPHERD OF OMAHA, INC., A CORPORATION, APPELLEE.

228 N. W. 2d 287

Filed April 24, 1975. No. 39762.

Michael McCormack and Michael J. Mooney of Mc-Cormack, Cooney & Mooney, for appellants.

Charles R. H. Kluver and John H. Kellogg, Jr., of Hotz, Hotz & Kellogg, for appellee.

Heard before WHITE, C. J., BOSLAUGH, CLINTON, and BRODKEY, JJ., and COLWELL, District Judge.

WHITE, C. J.

This is an action by the plaintiffs and appellants, Kenneth M. and Nelsie R. Donahoo, in which they seek an abatement of the purchase price of real estate purchased from the defendant, Home of the Good Shepherd of Omaha, Inc. (hereinafter referred to as the "Home"), on the theory that there was a shortage of acres in an alleged contract calling for the delivery of approximately 215 acres of land. The defendant cross-petitioned for the balance due on the purchase price of $376,250. The District Court resolved all the issues presented in favor of the defendant Home, dismissed the plaintiffs' petition, and entered judgment in favor of the defendant Home for the balance of the purchase price due under the contract of sale. We affirm the judgment of the District Court.

The first and fundamental question presented is whether the contract entered into was a sale by the acre, or a purchase in gross. The land involved is known as the "Shepherd Hills" owned by the defendant and originally purchased by it to build a home for girls. The Home changed its plans and abandoned the project, and was interested in selling this large tract of land, a portion of which borders on the Elkhorn River. Donahoo, the plaintiff purchaser, had been raised in the vicinity of the Shepherd Hills and had lived on the adjoining property for the first 16 years of his life. Donahoo had maintained a continuing interest in the Shepherd Hills vicinity and had recently purchased from his mother a tract of land adjoining Shepherd Hills.

The Home had acquired the property in 1965 for the sum of $160,000. The purchase agreement the Home had entered into in 1965 and the deed to it made no reference to acreage or the number of acres. The descriptions used in the purchase agreement and deed when the Home acquired the property are *identical* to the legal description in the purchase agreement, land contract, and deed from the Home to Donahoo.

A Mr. Mel Strong, "on his own," and without a listing contract or agency agreement with the Home, learned of the Home's plans to sell the property, contacted the plaintiff Donahoo, and secured from him an offer to purchase the property. It is undisputed that there was no listing agreement between the Home and Strong, or the Harney Realty Company of which he was sole proprietor, and that Strong had merely gone out and located Donahoo as a prospective purchaser since he knew that Donahoo owned the adjoining property and had expressed an interest in the Shepherd Hills area. This initial offer procured by Strong, dated April 26, 1972, stated that the purchaser recognizes that he is paying for 215 acres and that the purchase price would be $322,500. This offer was presented to the Home and was turned down. On November 11, 1972, the Home entered into an *exclusive* listing agreement with the N. P. Dodge Company to sell the property. The listing agreement stated that the property was listed at $2,150 per acre and that there were approximately 216 acres. It appears that the reason the listing agreement recited these figures was that the tax records of the County of Douglas, Nebraska, showed 215.16 acres and the Home itself, having purchased the property in gross, had no independent knowledge of the exact amount of acreage. The N. P. Dodge Company, acting through Jerry Hassett and Wallace Wiig, their agents, contacted Donahoo about purchasing the property and Wiig took out a proposed purchase agreement to Donahoo for signature on November 28, 1972. However, Donahoo informed Wiig on November 29, 1972, that *he was going to submit an offer through Mr. Strong of the Harney Realty Company.* Prior to this time Strong had attempted to get a listing on the property from the Home but had been informed by it that the N. P. Dodge Company had an exclusive listing. Strong, on behalf of Donahoo, contacted Hassett of N. P. Dodge and submitted a purchase agreement dated November 29, 1972. It is true that this

Strong agreement initially stated that the land contained approximately 215 acres. Hassett of N. P. Dodge, in reviewing the terms and conditions of this offer, and knowing how the property was conveyed previously, made an effort to locate a survey. He was unable to find one and after discussion with counsel, it was decided that the Home should not make any representation as to acreage. Hassett called Strong and advised him that the reference to acreage must be stricken and requested that an addendum be forwarded showing that the purchase was for the property legally described, without reference to acreage. After receiving an addendum still referring to an acreage Hassett again called Strong rejecting any reference to specific acreage. Strong did not answer.

In the meantime, and before the acceptance of this offer of November 29, 1972, it became necessary to extend the acceptance date of the offer, since the Home had to discuss with and secure the approval of its Provincial Council.

The Council approved the sale for $376,250 and delegated the details to one Sister Gabriel. After discussing the purchase agreement with Hassett of N. P. Dodge, the reference to acreage in the purchase agreement and the addendum were crossed out and initialed by Sister Gabriel. In addition, a statement was added to the acceptance clause of the purchase agreement stating that: "We accept the offer of $376,250 *for the property legally described herein.*" (Emphasis supplied.) This statement was initialed by Donahoo. Hassett told Strong that the Home would not be pinned down to representing the number of acres. In any event, Strong took the purchase agreement to Donahoo and Donahoo initialed the above-described changes in the purchase agreement and the statement addendum. This purchase agreement of November 29, 1972, as changed, was executed by both parties. Donahoo then decided that he wanted to purchase the property on land contract in-

stead of a cash sale, and so a new purchase agreement, dated January 26, 1973, was drawn up by Strong to effectuate Donahoo's wishes, and was delivered to Hassett of N. P. Dodge. *This new and last purchase agreement* noted the new mode for the payment of the land, and it made no reference to the acreage in the property. The subsequent land contract executed pursuant to the new purchase agreement also made no reference to the acreage in the property and referred to the sale of "property legally described herein."

After the second purchase agreement, changing the financial terms of the sale, but before the signing of the final land contract incorporating the terms of the second purchase agreement, Donahoo delivered the abstract of the property to his attorney and received an opinion from the attorney stating that: *"The original Government parcels appear to be fractional and because of the fact that the land adjoins a river, the acreages cannot be accurately ascertained from the abstract. If the acreage is material, it should be determined by a recent survey."* (Emphasis supplied.) Again, Donahoo relying on Strong asked him to see if there was a recent survey. Strong investigated and replied that there was none. Donahoo did nothing further in regard to a survey.

The sale was closed with counsel of both parties present. A deed, executed pursuant to the purchase agreement and the land contract, was exhibited at the closing, and it made no reference to acreage in the property. The deed, exhibit 48, was held in escrow by the attorney for the Home pending Donahoo's completion of payments. After the closing of the sale and the placing of the deed in escrow, Donahoo in subsequent dealings with the property, had a survey made, and discovered the acreage shortage.

In addition to the above basic facts, the trial court, sitting in equity, liberally permitted a large volume of testimony touching upon oral conversations, understand-

ings, and opinions during the long period of negotiations, initialing, changing, and the final consummation of the written contract. Much of this conflicting testimony concerns the status of Strong with relation to the Home and Donahoo. In our decision, we are forced, in the interest of brevity to refrain from a detailed recital of the point-counterpoint-and conflicting testimony in these areas. As we shall see, much of it was perhaps inadmissible and irrelevant to the issues involved in this case because of the basic rule that where a contract, after preliminary negotiations and oral conversations, is reduced to writing that is clear and unambiguous, there is a conclusive presumption that the parties have reduced their entire engagement to writing, and that any parol agreement is merged in the written contract, and that testimony of prior or contemporaneous conversations to alter, contradict, or explain such writing is incompetent to vary the terms of the written instrument. Transportation Equipment Rentals, Inc. v. Mauk, 184 Neb. 309, 167 N. W. 2d 183; Ford v. Luria Steel & Trading Corp., 192 F. 2d 880; Parsons Constr. Co. v. Metropolitan Utilities Dist., 170 Neb. 709, 104 N. W. 2d 272.

The plaintiffs' contentions are overlapping. Nevertheless, they will be considered separately. The plaintiffs first contend, in substance, that the contract for sale was a sale by acre and not one in gross for the reasons that the tract was listed and negotiated by the acre; that it was represented to the plaintiffs by Mel Strong to contain 215 acres more or less an acre or two; that it was represented by the defendant's attorney to contain 215 acres; that the purchase price in the land contract is an exact multiple of $1,750 per acre times 215 acres; and that the minutes of the meetings of the Provincial Council of the Home show a decision to accept an offer of $1,750 per acre.

On this crucial issue, the parties cite many different authorities, and applicable principles of law, but their

attempt to colormatch cases on the facts is unrewarding, and the principles of law cited, while accurate, depend upon a basic decision as to the significance of the underlying facts. A basic rule is that in determining whether a sale is by the acre or in gross, the intention of the parties is controlling, as in other contracts, and must be given effect. 55 Am. Jur., Vendor and Purchaser, § 130, p. 605; Hart v. Harding, 106 Neb. 428, 184 N. W. 46. Of course, where there is ambiguity in the contract as to whether a sale is strictly in gross or one by the acre, extrinsic evidence, such as the circumstances which surround the parties, and their situations, may be admissible as an aid in interpreting the contract to ascertain the intention of the parties. See 55 Am. Jur., Vendor and Purchaser, § 130, p. 605.

The thrust of plaintiffs' argument is to put emphasis and controlling weight upon the formulation of the original purchase agreement by N. P. Dodge and the representations and "understandings" of Strong. They argue that at that point all the parties considered the contract by the acre, and that the contract was drawn accordingly. However that may be, it is incontestable that the specific acreage provision in the offer was stricken out and initialed by Sister Gabriel and Donahoo. This understanding in the contract, in clear and precise terms, states that the sale was of the plot of ground for "property legally described herein." This description contained no reference to acreage. The evidence shows that the Home insisted that the acreage provision be struck because the Home itself was uncertain of the acreage and had received the property as "legally described" and without reference to acreage. The evidence further shows an insistence that the purchaser, Donahoo, be advised of this change or representation, and that he be required to assent thereto by initialing the change himself, which he did. We feel that no clearer intention could be mutually intended by the parties that the sale was in gross. But the reaffirmation

of the assent to this condition appears even stronger when we consider that the Home was willing to enter into a new purchase agreement changing the financial arrangements. This was accomplished according to Donahoo's wishes and again the new purchase agreement contained no reference to acreage and affirmatively described it as being sold as "legally described herein." This written purchase agreement referred to provided that the offer was based upon the personal inspection and investigation of the premises and not upon any representation by the seller or the seller's agent. It also appears, as is common with the sale of riverfront and rolling hill property, that the acreage was difficult to ascertain and in this particular situation appears still uncertain because one survey was to the high bank of the Elkhorn River rather than to the thread of the stream. In any event, Donahoo after the new purchase agreement, received the abstract of title and had it examined by his own lawyer. His own lawyer reported that the original government parcels "appear to be fractional" and stated "because of the fact that the land adjoins a river, *the acreages cannot be accurately ascertained from the abstract. If the acreage is material,* it should be determined by a recent survey." (Emphasis supplied.) Much emphasis is placed upon the tax record acreage. The unreliability of precise acreage records with respect to accretion land and survey therein is well-known in the real estate profession. However that may be, Donahoo was specifically warned of the danger of such an acreage record, and told to find out, if interested, what the exact acreage was. He failed to do so and proceeded to sign the land contract. Under these circumstances there is an entire lack of proof that there was any ambiguity or failure of the parties to have a meeting of the minds as to the exact nature of the sale.

Any fraud or ambiguity in the preliminary negotiations and bargaining representations was specifically

and categorically eliminated by affirmative action of the parties. Here the interpretation of the contract is clear from the conduct of the parties and the actions they actually took during the process of its formulation. The intent to sell in gross is further reaffirmed by the Home in its conduct while subsequently acting upon the original purchase agreement that had the acreage provision deleted from it. Donahoo relied upon the changed terms in the new purchase agreement and failed to secure a survey after being advised to secure one, prior to his signing the final land contract. Closely parallel here is the fundamental rule that the interpretation given a contract by the parties themselves while engaged in the performance of it is one of the best indications of the true intent of their contract, and should be given great if not controlling influence, and the courts should ordinarily enforce such construction. Lortscher v. Winchell, 178 Neb. 302, 133 N. W. 2d 448; McLeod v. Crawford, 176 Neb. 513, 126 N. W. 2d 663. A contract of sale by the tract or in gross is one wherein boundaries are specified (as here) but quantity is not specified or, if specified, the existence of exact quantities specified is not material; each party takes the risk of the actual quantity varying to some extent from what he expects it to be. 55 Am. Jur., Vendor and Purchaser, § 127, p. 601. A contract may be originally one by the acre and subsequently so modified as to be turned into a sale in gross. See Annotation, 1 A. L. R. 2d, § 6, p. 18. See, also, O'Shea v. Hampton, 127 Neb. 60, 254 N. W. 670; Sibley v. Hayes, 96 Tex. 78, 70 S. W. 538; Annotation, 1 A. L. R. 2d, p. 18 (footnote 13). We come to the conclusion that there was no ambiguity in the land contract signed and executed by the parties, and that it provided for a sale in gross. There is no merit to the plaintiffs' contention.

In an overlapping argument, the plaintiffs next assert, in effect, that the Home's actions and representations constituted fraud in the inducement of the con-

tract. Again, the thrust of this argument is an emphasis upon the testimony of Strong, concerning his representations to Donahoo and his conversations and the opinions in connection with the negotiations with N. P. Dodge, who did represent the Home under a listing contract. Again, we point out, as we have previously herein decided, assuming that N. P. Dodge or the Home in the negotiations made statements as to acreage to Donahoo, or his agent, that they were effectively corrected and agreed to by Donahoo and could not have been relied upon by him in signing the final land contract. We have already explored the significance of the assertion that Donahoo relied upon the acreage statements in the tax records. Here applicable is what this court said in In re Estate of Robinson, 105 Neb. 1, 178 N. W. 840: " ' * * * Each tract is definitely limited, and any surveyor could easily ascertain its contents; and the plaintiff might have known (ascertained) the quantity of land contained within the limits described, before he concluded his purchase, by taking proper measures. If, to avoid any trouble, he chose to rely on the estimation of the defendant, he should have taken care that an express convenant was introduced into the deed.' " The deed was exhibited at the closing conference, with counsel present, and Donahoo, through his counsel, at that time could have insisted that a warranting covenant as to acreage be placed therein.

Despite the almost conclusive negative evidence, plaintiffs continue to assert that Strong was an agent of N. P. Dodge and that he misrepresented the acreage in order to secure the deal. They assert strongly that the payment of a commission by N. P. Dodge to Strong, of itself, is enough to create an agency relationship. We disagree. We have said before that the payment of fees is not enough to create an agency relationship. Anderson v. Valley Feed Yards, Inc., 175 Neb. 719, 123 N. W. 2d 839. An agency relationship exists only when there has been a manifestation of consent that one person

shall act on behalf of another and is subject to that person's control. Restatement, Agency 2d, § 1. The distinguishing features of an agency relationship are consent and control. It is conclusively clear that the Home never gave its consent for Strong to sell the property. Whatever the exact nature of his relationship with Donahoo is, it is a fact that the Home refused Strong's request to be its broker when Strong first approached the Home concerning its proposed sale. There is no evidence that the Home had any control over what Strong said. There was no written agreement or oral agreement between the Home and Strong. Section 36-107, R. R. S. 1943, requires that a sale of real estate made through a broker be in writing between the broker and the landowner. Plaintiffs nevertheless argue that Strong was a subagent of N. P. Dodge. Again, the evidence shows that N. P. Dodge had no control of any nature over Strong and the evidence is clear and undisputed that it was Donahoo who insisted that Strong carry out the dealings *for him.* Strong submitted Donahoo's offer to N. P. Dodge. As we have set out before, N. P. Dodge first attempted to solicit an offer from Donahoo but Donahoo advised that he would use Strong in conducting any negotiations and rejected N. P. Dodge's direct solicitations. We reach this conclusion de novo on a cold record. We point out, however, that the oral testimony in this area of Strong's representations is subject to the rule, particularly applicable here, that this court will consider the fact that the trial court saw and heard the witnesses, and observed their demeanor, and will give great weight to the trial court's judgment as to credibility. There is no merit to the contention that there was fraud in the inducement of the contract for the sale of the property in gross.

It becomes unnecessary for us to consider the other contentions of the plaintiffs with relation to the admissibility of evidence.

The judgment of the District Court in denying abate-

ment, and granting judgment on the cross-petition for the balance of the purchase price is correct and is affirmed.

AFFIRMED.