STATE OF NEBRASKA EX REL. DAVID R. MEDLIN,
COUNTY ATTORNEY OF BOONE COUNTY, NEBRASKA,
APPELLEE, V. RANDOLPH C. LITTLE, APPELLANT.

703 N.W.2d 593

Filed September 23, 2005. No. S-04-830.

David W. Jorgensen, of Nye, Hervert, Jorgensen & Watson, P.C., for appellant.

Vincent Valentino, of Angle, Murphy, Valentino & Campbell, P.C., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

Neb. Rev. Stat. § 32-562(5) (Reissue 2004) provides the procedure to follow when a county commissioner resigns from office. It states that a resignation becomes effective when accepted by the county clerk.

The appellant, Randolph C. Little, drafted and signed a letter of resignation and delivered it to Henry R. Thieman, the chairman of the Boone County Board of Commissioners. Thieman delivered the resignation to the Boone County clerk. Little claims that Thieman lacked authority to deliver the resignation letter.

After the county attorney filed a quo warranto action, the district court found that Little had resigned and ousted him from office. Little appeals. We affirm because, in our de novo review, we find that Thieman had apparent authority to deliver the resignation to the county clerk.

## BACKGROUND

On November 5, 2002, Little was elected Boone County commissioner for road district No. 1. During his tenure, he had personal conflicts with the county clerk and Thieman. Little believed that Thieman frequently changed his position and that the county clerk constantly interfered with the board's business.

Before the board meeting, Little drafted and signed a resignation letter dated January 13, 2004, addressing it to Thieman and stating he was resigning effective March 1, 2004. At that time, both Little and Thieman were mistaken about the resignation procedures, thinking that the county clerk placed the resignation letter on the board's agenda and that the resignation was not final until accepted by a vote of the board.

On January 13, 2004, Little asked to meet with Thieman after the county clerk and Thieman opposed a proposal he made at a board meeting held earlier that same day. Little was frustrated because he expected Thieman to support it. Little testified that he "took the [resignation] letter that day with the idea that if [Thieman opposed the proposal], that that was going to be the act that caused [him] to start giving consideration to actually resigning."

During the private meeting with Thieman, Little delivered the resignation letter to him. He told Thieman he disapproved of the county clerk's interference and Thieman's inability to "rein" him in. Thieman asked him to reconsider. In response, Little said he would not resign if Thieman (1) would reconvene the board, (2) have a proper meeting without the county clerk's undue influence, and (3) vote the way Thieman had promised. After Thieman explained why he could not do that, Little handed him the letter and said "okay, there's your letter of resignation."

Ultimately, Thieman persuaded him to give the decision more thought, and the two agreed to keep the resignation confidential until Little told Thieman "to do different."

The next day, a friend of Little sent an e-mail to him and some of their mutual friends disclosing that Little had submitted his resignation. After receiving the e-mail, Little contacted Thieman by telephone on January 15, 2004, and told Thieman, "Do what you have to do."

Little, however, testified that when he said "do what you have to do," he intended to give Thieman discretion only when responding to questions from the media. But Thieman testified that he understood the conversation to mean that he had the discretion to decide what to do about delivering the letter. Specifically, Thieman stated, "Little had advised me to do what I had to do, so that's what I'm doing. . . . I'm doing it because I think I have a duty to do it, whether I like it or not." Thieman also explained that he felt he had to move quickly to inform the county clerk, county treasurer, and county attorney so they would not be "blind-sided" by the press, because they had to fill the vacancy.

Similarly when asked whether Little "specifically authorized" or gave him permission to deliver the letter to the county clerk, Thieman replied, "He told me to do what I need[ed] to do." Thieman also said he did not call Little to tell him the letter had been delivered to the county clerk because he "didn't feel it was necessary" because Little told him to do what he needed to do.

Thieman then called the county clerk and asked that he arrange a meeting later that day with the county treasurer and the county attorney. At the meeting, Thieman gave each a copy of the letter and a brief description of the telephone conversation he had had earlier that day with Little. He specifically stated, "Little called me and told me that I was to do what I had to do with it."

Little and Thieman did not speak again until Sunday, January 18, 2004, when Little called to say that after talking to his constituents, he had second thoughts about resigning. Thieman then told him he had delivered the letter. Although frustrated, Little never asked Thieman to retrieve the letter.

On January 26, 2004, Little gave Thieman a letter purporting to withdraw his resignation. When the board reconvened later on that date, Thieman gave the withdrawal letter to the county attorney.

The county attorney filed a quo warranto action seeking to enforce Little's resignation. The trial court entered a judgment ousting Little from office.

## ASSIGNMENT OF ERROR

Little assigns, rephrased, that the district court erred by declaring his resignation effective.

## STANDARD OF REVIEW

■■■ Quo warranto is an action in equity and is reviewed de novo on appeal. See *Krajicek v. Gale*, 267 Neb. 623, 677 N.W.2d 488 (2004). Despite the de novo review, when credible evidence on material questions of fact is in irreconcilable conflict, an appellate court will, when determining the weight of the evidence, consider that the trial court observed the witnesses when testifying, and used those observations when accepting one version of the facts over the other. See *State v. Jones*, 202 Neb. 488, 275 N.W.2d 851 (1979).

## ANALYSIS

Little argues that Thieman lacked the authority to deliver the letter to the county clerk and that therefore, he had not resigned. Section 32-562(5) prescribes the applicable resignation procedure. It provides that a resignation of a board member must be given to the county clerk and takes effect when accepted.

Here, Little drafted and signed a resignation letter, which the Boone County clerk received and stamped. The parties do not dispute whether the county clerk's actions constituted a proper acceptance. Instead, Little claims that Thieman lacked the authority to deliver Little's resignation. Thus, a discussion of agency law provides a prism through which to view our analysis.

### FORMATION OF AGENCY RELATIONSHIP

■■■ In Nebraska, agency is a fiduciary relationship where two parties mutually agree that one may act on behalf of and subject to the control of the other. See *Landmark Enterprises v. M.I. Harrisburg Assocs.*, 250 Neb. 882, 554 N.W.2d 119 (1996). See, also, 3 Am. Jur. 2d *Agency* § 1 (2002). Whether an agency relationship exists depends on the facts underlying the relationship of the parties irrespective of the words or terminology used

by the parties to characterize or describe their relationship. See *Landmark Enterprises v. M.I. Harrisburg Assocs., supra.*

We find that an agency relationship existed between Little and Thieman. The two agreed that Thieman would hold the letter in confidence and deliver it to the county clerk once Little indicated he had made a decision. Thieman acted as an intermediary for Little, helping Little avoid further conflict with the county clerk, Little's self-described "political adversary." Similarly, Little controlled Thieman's performance because Thieman could not act without further instruction from Little.

### SCOPE OF AGENCY: APPARENT AUTHORITY

▮ Although an agency relationship existed between Little and Thieman, we look to whether Thieman acted within the scope of the agency. The scope of an agent's authority is a question of fact. *Oddo v. Speedway Scaffold Co.,* 233 Neb. 1, 443 N.W.2d 596 (1989). When establishing agency, a fact finder must consider the facts and circumstances of the case, the parties' relationship, their usual course of dealing, any instructions given, the parties' conduct, and the nature of the transaction. See *Goldfein v. Continental Ins. Co.,* 125 Neb. 112, 249 N.W. 78 (1933).

▮ Here, the relationship between Little and Thieman is best described as apparent agency. Apparent or ostensible authority gives a professed agent the power to affect the principal's legal relationships with third parties. The power arises from, and is limited to, the principal's manifestations to those third parties about the relationships. See *Franksen v. Crossroads Joint Venture,* 245 Neb. 863, 515 N.W.2d 794 (1994). Said another way, apparent authority is such authority as the agent seems to have by reason of the authority she or he actually has. *Double K, Inc. v. Scottsdale Ins. Co.,* 245 Neb. 712, 515 N.W.2d 416 (1994).

▮ An alleged principal clothes an agent with apparent authority when the alleged principal affirmatively, intentionally, or by lack of ordinary care causes third persons to act upon the apparent authority. See *Landmark Enterprises v. M.I. Harrisburg Assocs., supra.* But in order for the principal to incur responsibility for the acts of an agent with apparent authority, the authority must be traceable to the principal's own conduct; it cannot be established only by the agent's acts, declaration, or

conduct. See, *Double K, Inc. v. Scottsdale Ins. Co., supra*; *Goldfein v. Continental Ins. Co., supra*.

We examine apparent authority through the lens of the third party. Apparent authority to perform an act exists when a principal's conduct causes a third person to reasonably believe that the principal agreed that the person purporting to act for him or her could do so. See *First Nat. Bank of Omaha v. Acceptance Ins. Cos.*, 12 Neb. App. 353, 675 N.W.2d 689 (2004) (citing Restatement (Second) of Agency § 27 (1958)).

By drafting the letter, signing it, delivering it to Thieman, and then instructing him to "do what you have to do," Little clothed Thieman with apparent authority. Aware of these facts, the county clerk could reasonably believe that Thieman had the authority to tender Little's resignation. Moreover, Little's nonchalant instruction carelessly set off the chain of events leading to the county clerk's acceptance of the letter. Any lack of ordinary care is traceable to Little, the principal, not to Thieman, the agent. Because Little's actions clothed Thieman with the apparent authority to act, the district court correctly determined that Little had resigned.

### MISTAKE OF LAW OR FACT

Little argues, without specifically assigning as error, that Little and Thieman's mutual mistake as to the proper resignation procedure nullified any resulting resignation. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party assigning the error. *Eicher v. Mid America Fin. Invest. Corp.*, ante p. 370, 702 N.W.2d 792 (2005); *In re Petition of Omaha Pub. Power Dist.*, 268 Neb. 43, 680 N.W.2d 128 (2004). Thus, we do not address this argument.

### CONCLUSION

We conclude that Little clothed Thieman with apparent authority and that thus, Thieman was authorized to effect the resignation. Because the judgment of ouster was proper, the district court's order is affirmed.

AFFIRMED.