Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/02/2024 09:08 AM CST

State of Nebraska, appellee, v.
Favion Lara, appellant.

___ N.W.2d ___

Filed February 2, 2024.    No. S-23-167.

1. **Sentences: Evidence: Appeal and Error.** Absent an abuse of discretion, an appellate court will not disturb a trial court's rulings as to the source and type of evidence and information that may be used in determining the kind and extent of punishment to be imposed.

2. **Judgments: Words and Phrases.** A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.

3. **Plea Bargains.** When the facts are undisputed, the question of whether there has been a breach of a plea agreement is a question of law.

4. **Judgments: Appeal and Error.** When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling.

5. **Sentences: Appeal and Error.** A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court.

6. **Sentences: Evidence.** A sentencing court has broad discretion as to the source and type of evidence and information that may be used in determining the kind and extent of the punishment to be imposed, and evidence may be presented as to any matter that the court deems relevant to the sentence.

7. **Sentences: Evidence: Words and Phrases.** The definition of victim in Neb. Rev. Stat. § 29-119 (Cum. Supp. 2022) establishes only a baseline right to provide victim impact statements under Nebraska law, and it does not limit a sentencing court's broad discretion to consider relevant evidence from a variety of sources when determining a criminal sentence.

8. **Sentences: Words and Phrases.** A sentencing court's discretion includes allowing comments at sentencing from those directly impacted by a defendant's crime, even over a defendant's objection that the commenter is not a "victim" as that term is defined in Neb. Rev. Stat. § 29-119 (Cum. Supp. 2022).

9. **Plea Bargains: Words and Phrases.** Nebraska cases are careful to distinguish between plea agreements and cooperation agreements, stressing that the legal incidents of such agreements are different and the principles governing construction and enforcement are different.

10. **Courts: Plea Bargains: Prosecuting Attorneys: Sentences.** In Nebraska, sentencing courts are never bound by a plea agreement reached between a defendant and the prosecution, nor are judges bound to impose the sentence recommended by a prosecutor under a plea agreement.

11. **Plea Bargains: Prosecuting Attorneys.** Plea bargaining is an essential component of the administration of justice, and when a plea agreement rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.

12. **Plea Bargains: Contracts.** Generally, plea agreements are to be construed and enforced based upon contract principles.

13. ____: ____. Consistent with contract principles, Nebraska courts will not read implied-in-law terms into plea agreements and instead will follow the rule that courts implementing plea agreements should enforce only those terms and conditions actually agreed upon by the parties. Courts will not expand a plea agreement by judicial fiat.

14. **Plea Bargains.** A party can breach a plea agreement by either (1) violating an express term of the agreement or (2) acting in a manner not specifically prohibited by the agreement but still incompatible with explicit promises made therein.

15. **Plea Bargains: Prosecuting Attorneys: Proof.** A defendant who asserts the prosecution has breached a plea agreement has the burden to prove such breach.

16. **Plea Bargains: Specific Performance: Proof.** When a defendant establishes that a plea agreement has been breached, available remedies include (1) ordering specific performance of the agreement or (2) allowing withdrawal of the plea.

17. **Plea Bargains: Specific Performance.** A defendant who remains silent upon the breach of the plea agreement can neither move to withdraw the plea nor seek specific performance of the agreement.

18. **Plea Bargains: Specific Performance: Trial: Appeal and Error.** A defendant is precluded from obtaining trial or appellate relief in the

form of withdrawal of the plea unless the defendant moves to set aside the plea in the trial court; however, if the defendant objects at the trial level, despite failing to move to withdraw the plea, the defendant is nevertheless entitled at trial and on appeal to consideration of relief in another form, such as specific performance of the plea agreement.

19. **Plea Bargains: Records: Appeal and Error.** Even when a defendant has preserved for appellate consideration his or her claim that the express terms of a plea agreement were breached, the defendant must still present a record on appeal that supports the claimed breach.

20. **Records: Appeal and Error.** It is incumbent upon the appellant to present a record supporting the errors assigned; absent such a record, an appellate court will affirm the lower court's decision regarding those errors.

21. **Plea Bargains: Contracts.** Nebraska courts construe plea agreements under contract principles.

22. **Principal and Agent.** An agency relationship exists only when there has been a manifestation of consent that one person shall act on behalf of another and is subject to that person's control.

23. ____. The distinguishing features of an agency relationship are consent and control, and the existence of an agency relationship depends on the facts underlying the relationship of the parties.

24. ____. The scope of an agent's authority is a question of fact.

25. ____. Whether an agent has apparent authority to bind the principal is a factual question determined from all the circumstances of the transaction.

26. **Plea Bargains: Principal and Agent.** When construing and enforcing plea agreements, Nebraska courts treat the existence of any principal-agent relationship, and the scope of authority under any such a relationship, as questions of fact to be determined from the evidence properly before the court.

27. **Sentences.** Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors, as well as any applicable legal principles in determining the sentence to be imposed.

28. **Sentences: Appeal and Error.** When imposing a sentence, the sentencing court is to consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime.

29. **Sentences.** The appropriateness of a sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

30. **Sentences: Appeal and Error.** It is not the proper function of an appellate court to conduct a de novo review of the record to determine what sentence it would impose.

Appeal from the District Court for Hall County: Patrick M. Lee, Judge. Affirmed.

Mark Porto, of Wolf, McDermott, Depue, Sabott, Butz & Porto, L.L.C., for appellant.

Michael T. Hilgers, Attorney General, and Jordan Osborne for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Funke, Papik, and Freudenberg, JJ.

Per Curiam.

In this direct appeal, Favion Lara argues the sentences imposed on his plea-based felony convictions should be vacated and the cause should be remanded to the district court for resentencing before a different judge. Finding no merit to his assigned errors, we affirm the district court's judgment.

## I. BACKGROUND

Lara's convictions arise out of gunshots that were fired toward law enforcement officers on August 5, 2022, as they prepared to serve a search warrant on a residence in Grand Island, Nebraska. At the time, several law enforcement officers were positioned around the residence, waiting for the search warrant to be delivered. Two investigators with the Grand Island Police Department (GIPD) were positioned in front of the residence, standing near their vehicles, when they heard gunshots fired in rapid succession from "just south" of their

location. As the investigators drew their weapons and took cover, they heard a vehicle speeding away.

A subsequent investigation revealed that two of Lara's associates were inside the residence to be searched and saw the officers positioned outside, so they contacted some friends and asked them to "distract" the officers. The friends decided to fire shots at the officers, and Lara agreed to do the shooting. Lara was given a handgun and was driven to a nearby alley. From there, Lara walked to the corner, pointed the gun in the direction of the officers, and fired two shots. Lara then sent text messages to his friends inside the residence stating, "I let shots off," and "Dead ass i shot twice." Lara was 17 years old at the time of the shooting.

In August 2022, Lara was charged by information in the district court for Hall County with 14 felonies and 1 misdemeanor relating to the events of August 5. Around the same time, criminal charges were also filed against Lara in Hall County in several other cases. The district court denied Lara's motion to transfer all the cases to juvenile court, and that denial is not at issue in this appeal.

Ultimately, Lara reached a plea agreement that resolved all his pending criminal cases. During the plea hearing, defense counsel was asked about the terms of that agreement and the following discussion occurred:

[Defense counsel:] Okay. The plea agreement encompasses all four cases, Your Honor. The State has filed an amended information in CR22-504. Mr. Lara has agreed to plead guilty or no contest as charged in the amended information to Counts I, II, III, IV, and XIV. The State has agreed to dismiss the balance of the amended information in CR22-504. . . .

Further, the State has agreed to dismiss Cases CR22-502, 506, and 508 in their entirety with prejudice. Then finally, at the time of sentencing, the State has agreed that the State will recommend a total sentence of

15 to 20 years with Mr. Lara free to argue for less than that. That would include a five-year mandatory minimum sentence on Count XIV.

THE COURT: Is that the State's agreement?

[Prosecutor]: Yes, Your Honor. Additionally, the State will decline to file charges related to a marijuana distribution that occurred between August 5th and August 6th of this year.

THE COURT: Mr. Lara, is that the plea agreement that you believe you're entering into with the State?

[Lara:] Yes, sir.

THE COURT: Do you believe there are any other terms or conditions to the plea agreement that have not been discussed in court today?

[Lara:] No, sir.

. . . .

THE COURT: Part of that plea agreement was a dismissal of charges . . . [t]hat is completely within the attorney's discretion to do.

The other component of the plea agreement is a sentencing recommendation of a total of 15 to 20 years with your ability to argue for less. That's a sentencing agreement that is not binding upon the Court. Do you understand that?

[Lara:] Yes, sir.

As the factual basis for the plea, the prosecutor offered police reports detailing the shooting described above. It is undisputed that GIPD investigator Ryan Sullivan was one of the two investigators at whom Lara fired shots on August 5, 2022, and that Sullivan played a role in the investigation that led to Lara's charges.

The district court accepted Lara's pleas and found him guilty of two counts of attempted first degree assault on an officer, two counts of attempted use of a firearm to commit a felony, and one count of conspiracy to commit a felony. The court

ordered a presentence investigation report (PSR) and set the matter for sentencing.

At the sentencing hearing, the court noted it had received and reviewed the PSR and, in addition, had received a "group of letters" in support of Lara. Those letters were marked as a single exhibit for purposes of sentencing and received into evidence without objection. The court also noted receipt of a "victim statement from Investigator Sullivan," which was marked as an exhibit for purposes of sentencing. Sullivan's letter stated, in relevant part:

> Judge Lee,
>
> I received a victim notification for CR22-504 regarding Favion Lara being sentenced on February 1st, 2023 at 10:00am. I've been listed as a victim several times throughout my career with GIPD, and I've never felt compelled to reach out to a judge with a victim letter. I've even broken my face, resulting in metal being permanently affixed to my orbital socket, but still decided I didn't need to interject with the wheels of justice. This case is different. Favion Lara is different.
>
> In 12 years of policing, I've never been shot at. I've had some very bad people go as far as removing a gun from a holster, but they never made the choice to shoot at me. This should illustrate Favion Lara's mentality. Favion's defense will likely say Favion is "young and dumb". They're not wrong. He's 18. I think that is also his downfall. If Favion is willing to shoot at two police officers at the age of 18, what will he be willing to do when he has more "street cred" and experience as a criminal on the streets in the future[?]
>
> . . . .
>
> Your Honor, you have a chance at this sentence hearing to put away a very dangerous person for a significant amount of time. This is also an opportunity to show the city of Grand Island, we will not tolerate shooting at

police officers, and we are done with the ongoing gun crime in this city. Favion can be made the example for this age group. I'm told the sentencing recommendation will be around 15 years. I don't think jamming out after 7-8 years is enough punishment for shooting at police officers. I ask that you consider exceeding the recommendation, and sentence Favion to a more appropriate number of years, closer to the max sentence.

Thanks for taking the time to read this.

Sullivan's letter was not printed on GIPD letterhead, but a GIPD badge was stamped next to the signature line for "Investigator Ryan Sullivan #442."

Lara's counsel advised the court he had "no problem with [the] letter" from Sullivan and understood it was a letter "from the victim," but he objected to and moved to strike "the portion of the letter arguing for a sentence that exceeds the sentencing recommendation that was agreed upon as part of the plea agreement." In support, Lara's counsel stated, "I think it violates the plea agreement for the State to offer an exhibit by another officer of the State, an agent of the State, that specifically argues for something that exceeds the recommendation that was made pursuant to the terms of the plea agreement." The prosecutor advised the court that he had no objection to striking the language to which Lara objected.

The court overruled Lara's objection to Sullivan's letter, stating, "The Court will receive [the letter] in its entirety, and the Court will accept it for whatever weight it is worth as a victim's opinion . . . ." The court then advised the parties it was prepared to proceed with sentencing and asked Lara's counsel if he had any evidence he would like to present. In response, defense counsel called Lara's mother to adduce testimony regarding Lara's upbringing. Lara offered no testimony or exhibits regarding an alleged breach of the plea agreement.

During allocution, Lara said he was "sorry for putting the officers in danger" and he was "grateful that no one was hurt . . . because it could have been a lot worse." He acknowledged that he would be going to prison for an extended period of time and said that he intended to use the time to obtain his diploma through the GED program and "learn life skills that I can use in the real world." Defense counsel acknowledged the serious nature of Lara's crimes but emphasized his young age and difficult upbringing when advocating for a minimal sentence of incarceration. The prosecutor recommended "a total sentence of 15 to 20 years," consistent with the terms of the plea agreement.

After allocution, the court asked Lara's counsel if there was "any legal reason why sentence cannot be imposed today" and counsel replied, "No, your Honor." The court sentenced Lara to concurrent prison terms of 15 to 30 years on each of the convictions for attempted first degree assault on an officer and attempted use of a firearm to commit a felony, and to a consecutive prison term of 30 to 50 years on the conspiracy conviction.

Lara filed this timely appeal, which we moved to our docket on our own motion.

## II. ASSIGNMENTS OF ERROR

Lara assigns, restated, that the district court abused its discretion in (1) considering the portion of Sullivan's letter to which Lara objected because it resulted in a breach of the plea agreement and (2) imposing excessive sentences. Regarding both assignments, Lara seeks to have his sentences vacated and the cause remanded for resentencing before a different district court judge.

## III. STANDARD OF REVIEW

[1,2] Absent an abuse of discretion, an appellate court will not disturb a trial court's rulings as to the source and type of evidence and information that may be used in determining the

kind and extent of the punishment to be imposed.[1] A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.[2]

[3,4] When the facts are undisputed, the question of whether there has been a breach of a plea agreement is a question of law.[3] When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling.[4]

[5] A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court.[5]

## IV. ANALYSIS

### 1. FIRST ASSIGNMENT OF ERROR

In his first assignment of error, Lara argues the trial court abused its discretion by overruling his objection to that portion of Sullivan's letter asking the court to consider imposing a harsher sentence than was recommended by the prosecution. We understand Lara to make two related arguments in this regard.

First, although Lara does not dispute that Sullivan was one of the victims of his crimes, he argues that when Sullivan advocated for a particular sentence, he was acting in his capacity as an investigating officer, not as a crime victim. Second, Lara argues that investigating officers are agents of the prosecution and are therefore bound by the prosecution's promises under a plea agreement, so Sullivan's letter "explicitly

---

[1] See *State v. Thieszen*, 300 Neb. 112, 912 N.W.2d 696 (2018).

[2] *Id*.

[3] *State v. Smith*, 295 Neb. 957, 892 N.W.2d 52 (2017).

[4] *Id*.

[5] *State v. Earnest, ante* p. 527, 997 N.W.2d 589 (2023).

advocating"[6] for a harsher total sentence than the prosecution agreed to recommend resulted in a breach of the plea agreement. We consider each argument in turn.

### (a) No Abuse of Discretion in Receiving Letters as Victim's Opinion

Lara argues on appeal that Sullivan's remarks on an appropriate sentence were made in his capacity as a police investigator. The State disagrees and argues the remarks were made by Sullivan in his capacity as a crime victim. We see some support for both positions in the record, but the trial court expressly received the letter "for whatever weight it is worth as a victim's opinion." Lara argues this evidentiary ruling was an abuse of discretion.

[6] A sentencing court has broad discretion as to the source and type of evidence and information that may be used in determining the kind and extent of the punishment to be imposed, and evidence may be presented as to any matter that the court deems relevant to the sentence.[7]

[7,8] Here, Sullivan is not considered a statutory "victim" with certain enumerated rights as that term is defined under Neb. Rev. Stat. §§ 29-119 and 81-1848 (Cum. Supp. 2022), because the specific crimes to which Lara pled are not among the crimes listed in § 29-119. But we have consistently said that the definition of victim in § 29-119 establishes only a baseline right to provide victim impact statements under Nebraska law, and it does not limit a sentencing court's broad discretion to consider relevant evidence from a variety of sources when determining a criminal sentence.[8] And our cases demonstrate that this discretion includes allowing

---

[6] Brief for appellant at 14.

[7] See *Thieszen, supra* note 1.

[8] See, *id.*; *State v. Galindo*, 278 Neb. 599, 774 N.W.2d 190 (2009).

comments at sentencing from those directly impacted by a defendant's crime, even over a defendant's objection that the commenter is not a "victim" as that term is defined in § 29-119.[9]

Both Lara and the State agree that, factually, Sullivan is a victim of Lara's crimes, and the record supports that conclusion. The operative amended information and the PSR both identified Sullivan by name as the victim of Lara's crimes, and the PSR stated that a "victim impact statement" was sent to the court regarding the current offense. Sullivan's letter expressly mentioned receiving "a victim notification" and explained that he has been identified as a victim several times throughout his career as a GIPD investigator, but in the past he "never felt compelled to reach out to a judge with a victim letter." Although Lara correctly notes that some of the information in Sullivan's letter was investigatory in nature, Lara did not object to that portion of the letter on any basis, and instead, he advised the court he had "no problem" treating the bulk of Sullivan's letter as a victim's opinion and objected only to the sentencing recommendation. Moreover, we are aware of no authority, and Lara cites to none, expressly restricting the information that a victim can include in an impact statement to the court in a case such as this.[10]

On this record, we cannot say that the district court abused its discretion in construing Sullivan's entire letter as a

---

[9] See, *Thieszen, supra* note 1 (holding court did not err in allowing family of murder victim to make victim impact statements because definition of "victim" in § 29-119 does not limit trial court's broad discretion to consider relevant evidence from variety of sources when determining criminal sentence); *Galindo, supra* note 8 (same).

[10] But see *Bosse v. Oklahoma*, 580 U.S. 1, 2, 137 S. Ct. 1, 196 L. Ed. 2d 1 (2016) (holding that in capital murder sentencing proceedings it violates Eighth Amendment to allow jury to consider testimony from murder victim's family regarding "opinions about the crime, the defendant, and the appropriate sentence").

"victim's opinion" and receiving it into evidence at sentencing for that limited purpose.

### (b) Sullivan's Sentencing Remark
### Did Not Breach Plea Agreement

We understand Lara's primary argument on appeal to be that no matter how the letter was construed by the trial court, Sullivan was acting as an agent of the prosecution when asking the court to consider imposing a harsher total sentence, and that thus, his request breached the terms of the plea agreement. To address this argument, we first review the legal principles governing the construction and enforcement of plea agreements in Nebraska.

### *(i) Construing and Enforcing*
### *Plea Agreements*

[9] As a preliminary matter, we note our cases have been careful to distinguish between plea agreements and cooperation agreements, stressing that the legal incidents of such agreements are different and the principles governing construction and enforcement are different.[11] Plea agreements are negotiated "between the defense counsel and the prosecuting attorney,"[12] while cooperation agreements, under which "the State agrees to limit the prosecution in some manner in consideration for the defendant's cooperation,"[13] can include not just the prosecution and the defendant, but also law enforcement officers.[14] Here, the parties agree, and the record

---

[11] See *State v. Wacker*, 268 Neb. 787, 688 N.W.2d 357 (2004).

[12] § 29-119 (defining plea agreement). See, also, *Wacker, supra* note 11 (defining pure plea agreements).

[13] *Wacker, supra* note 11, 268 Neb. at 792, 688 N.W.2d at 362.

[14] See, e.g., *State v. Peterson*, 280 Neb. 641, 788 N.W.2d 560 (2010) (finding cooperation agreement between county law enforcement officers, defendant, and prosecutor); *Wacker, supra* note 11 (finding cooperation agreement between investigating officer, defendant, and prosecutor).

supports, that Lara and the prosecuting attorney entered into a plea agreement, not a cooperation agreement. We confine our analysis accordingly.

[10,11] In Nebraska, sentencing courts are never bound by a plea agreement reached between a defendant and the prosecution,[15] nor are judges bound to impose the sentence recommended by a prosecutor under a plea agreement.[16] But plea bargaining has been recognized as an essential component of the administration of justice,[17] and both the U.S. Supreme Court and this court have held that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."[18]

[12,13] Generally, plea agreements are to be construed and enforced based upon contract principles.[19] Consistent with contract principles, Nebraska courts will not read implied-in-law terms into plea agreements and instead will follow the rule that "courts implementing plea agreements should enforce only those terms and conditions actually agreed upon

---

[15] See, *State v. McCulley*, 305 Neb. 139, 939 N.W.2d 373 (2020); *State v. Landera*, 285 Neb. 243, 826 N.W.2d 570 (2013).

[16] See *State v. Leahy*, 301 Neb. 228, 917 N.W.2d 895 (2018).

[17] See *Santobello v. New York*, 404 U.S. 257, 260, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971) ("[t]he disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called 'plea bargaining,' is an essential component of the administration of justice. Properly administered, it is to be encouraged. If every criminal charge were subjected to a full-scale trial, the States and the Federal Government would need to multiply by many times the number of judges and court facilities").

[18] *Id.*, 404 U.S. at 262. Accord *State v. Gonzalez-Faguaga*, 266 Neb. 72, 662 N.W.2d 581 (2003).

[19] See *Landera, supra* note 15. Accord *State v. Iddings*, 304 Neb. 759, 936 N.W.2d 747 (2020).

by the parties."[20] This limited analytical approach to construing plea agreements is consistent with U.S. Supreme Court precedent,[21] and it avoids "expanding the plea agreement by judicial fiat."[22]

[14,15] Under the limited analytical approach, a party can breach a plea agreement by either (1) violating an express term of the agreement or (2) acting in a manner not specifically prohibited by the agreement but still incompatible with explicit promises made therein.[23] A defendant who asserts the prosecution has breached a plea agreement has the burden to prove such breach.[24]

[16-18] When a defendant establishes that a plea agreement has been breached, available remedies include (1) ordering specific performance of the agreement or (2) allowing withdrawal of the plea.[25] In *State v. Birge*,[26] we addressed what a

---

[20] *Landera, supra* note 15, 285 Neb. at 254, 826 N.W.2d at 578. See, also, *State v. Cooke*, 311 Neb. 511, 973 N.W.2d 658 (2022) (defendant's interpretation of plea agreement was not supported by record or express terms and conditions actually agreed upon); *State v. Gildea*, 240 Neb. 780, 782, 484 N.W.2d 467, 468 (1992) (county attorney adhered to express terms of plea agreement and such terms "will not be extended beyond the bare terms of that agreement").

[21] See *United States v. Benchimol*, 471 U.S. 453, 456, 105 S. Ct. 2103, 85 L. Ed. 2d 462 (1985) (holding error for courts to "imply as a matter of law a term which the parties themselves did not agree upon").

[22] *Landera, supra* note 15, 285 Neb. at 254, 826 N.W.2d at 578.

[23] See, *Iddings, supra* note 19; *Landera, supra* note 15.

[24] See, *U.S. v. Perry*, 35 F.4th 293 (5th Cir. 2022) (defendant bears burden of demonstrating underlying facts to establish breach of plea agreement by preponderance of evidence); *U.S. v. Raifsnider*, 663 F.3d 1004, 1009 (8th Cir. 2011) ("party asserting the breach [of plea agreement] has the burden of establishing it"); *U.S. v. Huang*, 178 F.3d 184, 187 (3d Cir. 1999) ("defendant has the burden to establish breach of a plea agreement by a preponderance of the evidence").

[25] See, *Gonzalez-Faguaga, supra* note 18; *State v. Birge*, 263 Neb. 77, 638 N.W.2d 529 (2002). See, also, *Santobello, supra* note 17.

[26] *Birge, supra* note 25.

defendant must do to preserve these remedies. We explained that neither remedy is available to a defendant who fails to assert a breach of the plea agreement in the trial court.[27] We also stated:

> [A] defendant is precluded from obtaining trial or appellate relief in the form of withdrawal of the plea unless the defendant moves to set aside the plea in the trial court; however, if the defendant objects at the trial level, despite failing to move to withdraw the plea, the defendant is nevertheless entitled at trial and on appeal to consideration of relief in another form, such as specific performance of the plea agreement.[28]

In the sections that follow, we apply the foregoing principles to consider Lara's claim that Sullivan's sentencing remarks breached the terms of the plea agreement.

### (ii) Lara's Claim That Plea
### Agreement Was Breached

We begin by addressing whether Lara has preserved for appellate consideration his claim that the plea agreement was breached. The record shows that during the sentencing hearing, Lara made a timely objection and asked the court to strike that portion of Sullivan's letter which asked the court to consider imposing a harsher sentence than was recommended by the prosecutor. In support, Lara argued, "I think it violates the plea agreement for the State to offer an exhibit by another officer of the State, an agent of the State, that specifically argues for something that exceeds the recommendation that was made pursuant to the terms of the plea agreement."

---

[27] *Id*. See, also, *Gonzalez-Faguaga, supra* note 18, 266 Neb. at 80, 662 N.W.2d at 590 ("if the defendant remains silent upon the breach, he or she can neither move to withdraw the plea nor seek specific performance of the agreement").

[28] *Birge, supra* note 25, 263 Neb. at 84, 638 N.W.2d at 535.

[19,20] We conclude that under this court's holding in *Birge*, Lara's objection in the trial court adequately preserved for appellate consideration his claim that the plea agreement was breached by Sullivan's sentencing remark. But even when a defendant has preserved for appellate consideration his or her claim that the express terms of a plea agreement were breached, the defendant must still present a record on appeal that supports the claimed breach. As a general proposition, it is incumbent upon the appellant to present a record supporting the errors assigned; absent such a record, an appellate court will affirm the lower court's decision regarding those errors.[29]

In *Birge*, the plea agreement included the prosecutor's express promise to remain silent at sentencing. Although we did not say so explicitly in *Birge*, it is plain from our opinion that the record of proceedings in the trial court included the express terms of the plea agreement, the defendant's objection that the plea agreement had been breached by the prosecutor's remarks at sentencing, and the facts necessary to establish the alleged breach. We therefore concluded in *Birge* that the defendant was entitled to the relief of specific performance, and we affirmed the Nebraska Court of Appeal's decision to vacate the sentences and remand the cause for resentencing before a different judge.

Applying the lessons from *Birge* to the instant appeal, the record from the plea hearing shows that the plea agreement included the following express terms: Lara agreed to plead guilty or no contest to five specific charges in the amended

---

[29] See, *State v. Ferrin*, 305 Neb. 762, 942 N.W.2d 404 (2020). Accord, *State v. Britt*, 310 Neb. 69, 79-80, 963 N.W.2d 533, 541 (2021) ("[i]t is incumbent upon an appellant to supply a record which supports his or her appeal. Absent such a record, as a general rule, the decision of the lower court as to those errors is to be affirmed"); *State v. Bush*, 254 Neb. 260, 576 N.W.2d 177 (1998) (noting it is always incumbent on appellant to present record that supports assigned errors).

information filed in this case, and the prosecuting attorney
agreed to (1) dismiss with prejudice the remaining charges in
this case and in three other criminal cases, (2) not file charges
related to a marijuana distribution occurring between August
5 and 6 of 2022, and (3) recommend a total sentence of 15 to
20 years' imprisonment with the understanding that Lara was
free to argue for a more lenient sentence. All parties agreed
these were the express terms of the plea agreement, and Lara
confirmed that he did not believe there were "any other terms
or conditions to the plea agreement that have not been dis-
cussed in court today."

Having established that the record on appeal contains the
express terms of the plea agreement at issue and that Lara
sufficiently preserved his claim of breach for appellate consid-
eration, we turn now to whether Lara has presented a record
showing that the plea agreement was breached.

First, we clarify that Lara does not claim there was any
action or inaction by the prosecuting attorney that breached
the express terms of the plea agreement. Nor does he contend
the prosecutor made improper remarks at sentencing or acted
in a manner that was incompatible with any express promise,
such as soliciting others to advocate for a harsher sentence
than the prosecution agreed to recommend. Instead, it is
Lara's contention that GIPD investigator Sullivan violated the
plea agreement because "[d]espite being an identified victim,"
Sullivan was also an "agent of the State and was therefore
bound by the State's obligations under the terms of the plea
agreement."[30] More specifically, Lara argues:

> While the prosecutor representing the State at Lara's sen-
> tencing hearing recommended a sentence that conformed
> to the terms of the plea agreement, because Investigator
> Sullivan is an agent of the State, his letter to the court
> explicitly advocating for [a harsher sentence than] what

---

[30] Brief for appellant at 25.

the State agreed to recommend constituted a violation of the plea agreement necessitating reversal by this court.[31] In support of this argument, Lara offers citations to cases from other jurisdictions broadly holding that law enforcement officers are agents of the prosecution bound to comply with the prosecution's promises under a plea agreement.[32]

In response, the State argues that Sullivan was not acting as an agent of the prosecution when he submitted his victim impact statement. The State cites to cases that broadly conclude law enforcement officers are not agents of the prosecution for purposes of plea agreements,[33] and it notes that even in states that generally treat law enforcement officers as agents of the prosecution, the cases recognize an exception

---

[31] *Id.* at 14.

[32] See, *State v. MacDonald*, 183 Wash. 2d 1, 346 P.3d 748 (2015) (investigating officers function as arm of prosecution and thus are agents of prosecution bound by prosecutor's promises under plea agreement); *State v. Liskany*, 196 Ohio App. 3d 609, 630, 964 N.E.2d 1073, 1088 (2011) (police officers are agents of prosecution and officer's letter asking court to impose "longest possible" sentence breached prosecutor's promise under plea agreement to recommend sentence of not more than 4 years); *State v. Matson*, 268 Wis. 2d 725, 739, 674 N.W.2d 51, 57-58 (Wis. App. 2003) ("[i]nvestigating officers are so integral to the prosecutorial effort that to permit one to undercut a plea agreement would, in effect, permit the State to breach its promise," and therefore, "the prosecutor's investigating officers may not undercut those promises by making inconsistent recommendations"); *Lee v. State*, 501 So. 2d 591, 592 (Fla. 1987) (prosecutor's plea agreement that "'state'" will recommend certain sentence binds not just state prosecutor's office but "also precludes other state agents, such as state law enforcement officers, from making sentencing recommendations contrary to the terms of the agreements").

[33] See, *State v. Thurston*, 781 P.2d 1296, 1300 (Utah App. 1989) (police officers are not bound by plea agreement because "[b]inding a law enforcement agency or any other party to a prosecutor's sentencing recommendation would limit the trial court's access to all of the facts and, consequently, hinder the appropriate exercise of the judge's discretion"); *State v. Rogel*, 116 Ariz. 114, 568 P.2d 421 (1977) (prosecutor's promises in plea agreements do not bind police officers because police neither participate in plea negotiations nor have voice in dictating terms).

for officers who are also crime victims and choose to submit victim impact statements for the court's consideration.[34]

This court has not previously considered whether law enforcement officers are agents of the prosecution for purposes of binding them to the prosecution's promises under a plea agreement. We have carefully studied the reasoning of the opinions cited by both Lara and the State, but as we explain, we are not persuaded it is appropriate to judicially adopt a blanket rule either recognizing or rejecting a principal-agent relationship between prosecuting attorneys and law enforcement officers for purposes of construing and enforcing plea agreements.

[21-25] We construe plea agreements under contract principles, and under contract law, an agency relationship exists only when there has been a manifestation of consent that one person shall act on behalf of another and is subject to that person's control.[35] The distinguishing features of an agency relationship are consent and control,[36] and the existence of an agency relationship depends on the facts underlying the relationship of the parties.[37] The scope of an agent's authority

---

[34] See, *State v. Stewart*, 349 Wis. 2d 385, 393, 836 N.W.2d 456, 460 (Wis. App. 2013) (holding police officers do not act as agents of the State when submitting victim impact statements because "police officers were not speaking to the court as investigating officers, but as victims of a crime, which they have a right to do); *State v. Lampien*, 148 Idaho 367, 223 P.3d 750 (2009) (prosecutor's promise to recommend particular sentence under plea agreement does not bind law enforcement officers who are victims of defendant's crime or prohibit officers from making sentencing recommendations in their individual capacity as crime victims); *Evans v. State*, 751 N.E.2d 245 (Ind. App. 2001) (investigating officer's comments at sentencing were his personal opinions as crime victim and did not breach plea agreement under which prosecution agreed to recommend particular sentence).

[35] *Donahoo v. Home of the Good Shepherd of Omaha, Inc.*, 193 Neb. 586, 228 N.W.2d 287 (1975).

[36] See *id.*

[37] *State ex rel. Medlin v. Little*, 270 Neb. 414, 703 N.W.2d 593 (2005).

is also a question of fact.[38] Similarly, "[w]hether an agent has apparent authority to bind the principal is a factual question determined from all the circumstances of the transaction."[39]

Even though we acknowledge that other jurisdictions have adopted blanket rules deciding as a matter of law whether prosecuting attorneys and law enforcement officers have a principal-agent relationship for purposes of binding officers to plea agreements, we are not persuaded it is appropriate to decide the agency issue as a matter of law when construing and enforcing plea agreements. Doing so would appear to be contrary to the limited analytical approach to construing plea agreements under which both this court and the U.S. Supreme Court have rejected the practice of enforcing implied-in-law terms in plea agreements.[40] Moreover, a blanket rule would make the existence of a principal-agent relationship, and the scope of an agent's authority, settled matters of law without regard to whether such a relationship is actually supported by the specific facts and circumstances before the court.

[26] Thus, when construing and enforcing plea agreements, we decline to adopt any blanket rule purporting to decide as a matter of law whether prosecuting attorneys and law enforcement officers have a principal-agent relationship sufficient to bind law enforcement officers to the terms of a plea agreement. Instead, when construing and enforcing plea agreements, we treat the existence of any principal-agent relationship, and the scope of authority under any such a relationship, as questions of fact to be determined from the evidence properly before the court. Under this approach, prosecutors and defense attorneys remain free to negotiate express plea agreement terms addressing agents of the prosecution if they wish to do so, but courts will not imply agency relationships

---

[38] *RM Campbell Indus. v. Midwest Renewable Energy*, 294 Neb. 326, 886 N.W.2d 240 (2016).

[39] *Id*. at 338, 886 N.W.2d at 252.

[40] See *Landera, supra* note 15. See, also, *Santobello, supra* note 17.

as a matter of law in order to bind law enforcement officers to the promises made by the prosecution under a plea agreement with the defendant. If the parties to a plea agreement want to negotiate terms that purport to bind third parties to promises made by the prosecution, they should do so in express terms rather than relying on implied-in-law terms that Nebraska courts will not enforce.[41]

Applying this framework to the record Lara presents on appeal, we see nothing in the record suggesting that the parties to this plea agreement expressly agreed to restrict the sentencing recommendations of any party other than the prosecution. Nor do we see evidence to support a finding, under established contract principles, that Sullivan was acting as an agent of the prosecution for purposes of the plea agreement. The terms of the plea agreement were negotiated by the prosecuting attorney and defense counsel, and there is no evidence suggesting that Sullivan played any role in those negotiations. Nor is there any evidence suggesting that Sullivan consented to act on behalf of the prosecution when submitting his letter to the court or that he was subject to the control and direction of the prosecution in doing so.[42]

Lara's failure to adduce any evidence supporting his agency theory was not the result of a lack of opportunity. After the court overruled Lara's objection and received Sullivan's letter as a victim's opinion, the court asked Lara if he had any evidence he wished to offer. Lara called his mother to testify about his upbringing, but he did not adduce any evidence to support his agency theory, nor did he adduce evidence to support a finding that the plea agreement had been breached under any other theory.

When an objection is made asserting that the plea agreement has been breached, it is good practice for the court to afford the parties an opportunity to adduce evidence on the issue,

---

[41] See *Landera, supra* note 15.

[42] See *Donahoo, supra* note 35.

as the court did here. Our observation that neither party here adduced any evidence on the agency issue is not intended as criticism, especially because other jurisdictions appear to have approached the agency issue as a matter of law rather than a question of fact.

Although we recognize the novelty of the agency issue presented in this appeal, we nevertheless conclude that Lara has failed to present a factual record that supports the agency theory on which he bases his claim that Sullivan was bound to comply with the terms of the plea agreement. On this record, Lara failed to prove that Sullivan's sentencing remarks resulted in a breach of the plea agreement. His first assignment of error has no merit.

## 2. SECOND ASSIGNMENT OF ERROR

In his second assignment of error, Lara argues the district court abused its discretion by imposing excessive sentences. He does not dispute the sentences were within the statutory limits, and he concedes that "there is no excusing Lara's behavior, and no denying that a prison sentence was appropriate for what he did."[43] But he argues that "the sentence imposed by the District Court was beyond the pale for a first-time offender who ultimately did not injure a single person."[44]

[27-29] Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors, as well as any applicable legal principles in determining the sentence to be imposed.[45] When imposing a sentence, the sentencing court is to consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct,

---

[43] Brief for appellant at 29.

[44] *Id.*

[45] *State v. Ezell*, 314 Neb. 825, 993 N.W.2d 449 (2023).

and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime.[46] The appropriateness of a sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.[47]

Lara was found guilty of four Class II felonies and one Class IC felony. The trial court sentenced him to concurrent prison terms of 15 to 30 years on each of the Class II felonies and to a consecutive prison term of 30 to 50 years on the Class IC felony. The record shows that in arriving at these sentences, the district court reviewed the information contained in the PSR, considered the exhibits and testimony received at sentencing, considered the comments made during allocution, and considered all the relevant sentencing factors.

[30] It is not the proper function of an appellate court to conduct a de novo review of the record to determine what sentence we would impose.[48] Because the sentences imposed here were within the statutory sentencing range, we review the sentences for an abuse of discretion. An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[49] We can find no abuse of discretion in the sentences imposed here, and Lara's arguments to the contrary are without merit.

## V. CONCLUSION

Finding no merit to either of Lara's assignments of error on appeal, we affirm the judgment of the district court.

AFFIRMED.

STACY, J., participating on briefs.

---

[46] *Id.*

[47] *Id.*

[48] See *Earnest, supra* note 5.

[49] *Ezell, supra* note 45.